KELLOGG SWITCHBOARD & SUPPLY CO. v. INTERNATIONAL TELEPHONE MFG. CO. et al.

(Circuit Court, N. D. Illinois, E. D.    November 26, 1907.)

No. 26,527.

1. PATENTS—INFRINGEMENT—TELEPHONE TRANSMITTER.

The Dean patent, No. 687,499, for a telephone transmitter, the essential feature of which is the mounting of a practically weightless transmitter case upon the vibrating or main diaphragm of a telephone, and associating it with a fixed back electrode and a supplemental diaphragm, by which it is claimed that packing of the carbon granules within the chamber is prevented and stronger and more distinct tones are produced, although not a great advance upon the prior art, discloses patentable novelty and is valid; also, *held* infringed.

2. SAME—VALIDITY—ABANDONMENT.

One seeking to invalidate a patent on the ground that the invention had been abandoned has the burden of proof to establish by clear and convincing evidence an intention on the part of the inventor to dedicate the invention to the public.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 112.

Abandonment of invention, see note to Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 6.]

3. SAME—ESTOPPEL—DELAY IN APPLYING FOR PATENT.

The fact that a patentee, after perfecting his invention, delayed for six years before applying for a patent therefor, does not estop him from claiming priority for such patent over one subsequently issued to another, who had in the meantime conceived the same invention, but who took no steps to obtain a patent until after the first patentee had filed his application and had introduced his invention into public use.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 115.]

In Equity. On final hearing.

Jones, Addington & Ames and Robert S. Taylor, for complainant.
Coburn & McRoberts, for defendants.

KOHLSAAT, Circuit Judge. Complainant seeks hereby to enjoin the defendant from infringing claims 1, 2, 8, 10, 11, 13, 15, 16, 17, and 18—10 in all—of patent No. 687,499, granted to Dean November 26, 1901, for a telephone transmitter. They read as follows:

"1. In a telephone-transmitter, the combination with a suitable diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm peripherally secured to said main diaphragm and a second electrode associated with said supplemental diaphragm in an intraperipheral position, substantially as described.

"2. In a telephone-transmitter, the combination with a suitable diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and partaking of the movement of said diaphragm, a supplemental diaphragm peripherally connected with said diaphragm, a second electrode associated with said supplemental diaphragm in an intraperipheral position,

and an abutment for said second electrode mounted in a stationary position, substantially as described."

"8. In a telephone-transmitter, the combination with a suitable sound-receiving diaphragm carrying a laterally-deflected chamber for the granules of an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm adapted to close said chamber, and a second electrode associated with said supplemental diaphragm in an intraperipheral position, substantially·as described."

"10. In a telephone-transmitter, the combination with a diaphragm having a chamber for the granules carried thereon, of a supplemental diaphragm peripherally secured to said main diaphragm, a block fitting against the outer face of said supplemental diaphragm, a plate fitting against the outer face of said supplemental diaphragm, a plate fitted against the inner face of said diaphragm, and means to clamp said plate and block together upon the diaphragm, substantially as described.

"11. In a telephone-transmitter, the combination with a main diaphragm, a chamber or recess carried thereby, a supplemental diaphragm peripherally secured to said main diaphragm, a block pressing against the outer face of said supplemental diaphragm, a plate similarly located with reference to the inner face of the supplemental diaphragm and having a shank extending through a bore in said block, means to secure the shank so as to clamp the plate and block together upon the said diaphragm, and a support for the block, substantially as described."

"13. The combination with a vibratory member forming a chamber, of an electrode adapted to vibrate therewith, a supplemental member to close said chamber, a second electrode associated with said supplemental member and adapted to be rigidly mounted, and comminuted conducting material within said chamber, substantially as described."

"15. In a telephone-transmitter, the combination with a diaphragm, a recess or chamber carried thereby, a supplemental diaphragm, a block secured to the supplemental diaphragm a support for the block, and means to secure the block in its support in any position, whereby the block may be adjusted in its support by the vibration of the diaphragm and then secured in adjusted position, substantially as described.

"16. In a telephone-transmitter, the combination with a suitable sound-receiving diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm adapted to close said chamber, and a second electrode associated with said supplemental diaphragm in an intraperipheral position, substantially as described.

"17. In a telephone-transmitter, the combination with a suitable diaphragm, of a chamber for the granules carried thereon, an electrode within said chamber and moving with said diaphragm, a supplemental diaphragm having its periphery secured to the edge of the chamber, and a second electrode associated with said supplemental diaphragm in an intra peripheral position, substantially as described.

"18. In a telephone-transmitter, the combination with a diaphragm having a laterally-deflected chamber thereon, of an electrode in said chamber and movable therewith, a supplemental member, a second electrode associated therewith, said supplemental member being adapted to close said chamber and permit the free relative vibration of said electrodes, and comminuted conducting material within said chamber, substantially as described."

The feature of Dean's alleged invention here involved consists in mounting a practically weightless transmitter case upon the vibrating or main diaphragm of a telephone, and associating it with a fixed back electrode and a supplemental diaphragm, which form the rear wall of the transmitter case, whereby he claims that he secures the direct compression of the granules between the front and rear electrodes (which was not new), and also what he terms the inertia or action upon each other of the granules, which was also not new. If the patent in suit contains any novelty, it consists mainly, if not exclusively, in

the combination of the elements which produce these two forces, or, rather, in the device which sets them both into operation at once. As might be expected, the prior art introduced is profusely illustrated in the various patents covering transmitters. With the history of the art we need have little to do. It is replete with devices employing vertical electrodes held in constant electrical relation to each other by means of an interposed body of carbon granules whenever subjected to the current. The differentiation consists in the manner in which this is done. It seems that one grave difficulty in the practical operation of the transmitter lies in the tendency of the granules to pack. This causes defective action in reproducing the voice tones thrown against the main diaphragm. For complainant it is insisted that Dean's device prevents packing, and produces clearer and stronger tones than had heretofore been obtained, and by the use of simpler means. Defendant insists that there is nothing novel in the claims in suit. Of these there are two which in themselves embrace substantially all the features which are urged as anticipating the claims in suit; i. e., the White patent of 1892, and the Stromberg and Carlson patent of 1897. The former differs from the claims in suit in that the transmitter case is not carried on the front diaphragm. It has a mica supplemental diaphragm, which, together with the front electrode, forms the front wall of the granule chamber. The front electrode is carried on and moves with the main diaphragm. The rear electrode is stationary, as is the whole transmitter case, except the front wall. The rear electrode and the heavy chambered block in which it rests together form the rear wall of the case, which is comparatively very heavy. The supplemental diaphragm permits the front electrode to move relatively to the chambered block, being practically the same diaphragm as that which, together with the rear electrode, forms the rear wall of complainant's transmitter case. As a result, complainant insists there is no inertia effect with regard to the carbon granules.

The Stromberg-Carlson transmitter resorts to extraordinary means for preventing packing of the granules. Both electrodes are faced with wire gauze shields, and the granule chamber between the electrodes is divided by a like sheet of gauze. The chamber is surrounded by a yielding ring of felt or other elastic substance, whereby an expansive movement of the granules is facilitated. The whole is hermetically sealed in a water-tight case, which is difficult of adjustment in the event that repairs are required. These and other details make this device intricate. It seems to have worked successfully, but cannot be considered the equivalent of the White or Dean transmitters, which employ greatly simplified means. The theory that the so-called inertia effect upon the granules, in connection with the direct pressure, caused by attaching the transmitter case to the front diaphragm, results in a particular and extraordinary excellence of commercial telephone performance or distinctness theretofore unknown by reason of the overtones or other vibrations or electrical action permitted by the particles of carbon in their increased freedom from packing, seems to find its origin in the fertile brain of counsel and expert, rather than in the mind of the inventor. We look in vain for any such suggestion

in the claims or specifications. All the inventor was seeking for was increased freedom from packing of the granules by a new combination device. "The granules which are located out of the sphere of action of the electrodes," he says, "and which have absolutely nothing to do with the talking qualities of the instrument, are moved backward and forward by the small exposed portion of the diaphragm not covered by the moving electrode." What results, other than agitation of the granules, and as a result, substantial freedom from packing, follow from the so-called inertia effect produced by the transmitter case swinging with the front diaphragm, must, to one not electrically metaphysical, so to speak, rest largely in mere conjecture, in the presence of widely diverging expert evidence on the subject, unless he may be permitted to indulge somewhat in probabilities. It seems to be true that Dean was the first to attach his transmitter case to the main diaphragm in combination with a fixed back electrode and a supplemental diaphragm. "What I did, and what I considered I was doing," says Dean, "was reversing the White solid back button and making it light enough not to impede the vibration of the diaphragm." Complainant differs with Dean in this, and insists that the mere reversal of the White button cannot be made to produce the device in suit. Nor can it. Dean was a better inventor than witness. Counsel for complainant say that Dean's invention belongs to that class wherein the merit and novelty lie rather in the inventive thought than in the mere details of construction by which the inventive thought may be embodied in material form. This statement is of weight only so far as it emphasizes the importance of small changes in the device employed. To find an increased efficiency in an old device, even when overlooked by the patentee, is not invention. The case then stands like this: The device of the patent in suit is a new combination. Complainant's experts proclaim a new and somewhat mysterious result therefrom. Even though it serves but to give greater freedom to the granules, it has added something to the art, which it would seem must now advance with mincing step. Defendant uses the combination with the difference that its transmitter case is not integral with the front diaphragm, but is mechanically attached thereto. For the defendant the case stands thus, i. e.: No new result according to its experts is conclusively demonstrated. The combination is old as to all its meritorious features. The defendant does not use it. This last proposition does not seem tenable, while complainant's case is formed by upsetting the center of the main diaphragm into the shape of a cup standing on its side. Yet this form of transmitter case cannot be said to be an indispensable feature of complainant's transmitter. Even if it were, it is satisfactorily shown that Dean invented the designs used by defendant prior to defendant's application, and later applied for a patent thereon. Much of the briefs are devoted to this matter. In the view taken by the court, it is immaterial. Manifestly it could add nothing to the effect produced by mounting the transmitter case upon the front diaphragm to make the case integral with the diaphragm. The action would be precisely the same in either case, and the controlling idea is the same. Considering, therefore, the evidence produced on both sides, together with those

indicia which fairly seem to blaze the way toward invention, I am of the opinion that complainant's device shows patentable novelty, and that defendant has appropriated it.

There remains one other serious question. It is stated by defendant as follows, viz.:

"Under the rule announced by the Circuit Court of Appeals for this circuit in Universal Adding Machine Company v. Comptograph Company, 146 Fed. 984, 77 C. C. A. 227, the bill must be dismissed for want of equity."

Dean shows that he invented the transmitter in suit in 1895, and that it was complete and operative, so far as the vital principle of the device in suit is concerned. It seems that at that time Dean was under contract to turn over his new invention to his then employer. He chose to keep the discovery secret, or, at any rate, from his employer. Afterwards, at the instigation of complainant, in the spring of 1901, Dean went into the Patent Office for a patent, having urged the complainant to take the matter up as early as 1899. McCormick, defendant's assignor, filed his application for letters patent subsequent to that of Dean and subsequent to Dean's introduction into commercial use. McCormick claims to have made his invention prior to the filing of the Dean application, but to have laid it aside for some months. Under the circumstances, defendant insists that either Dean's alleged invention was an abandoned experiment or he was estopped from claiming the same by reason of the years which intervened between the invention and the filing of the application, applying the rule laid down in the Comptograph Case above referred to. But there are marked differences between the present case and that case. In the first place, Dean applied for his patent and introduced the invention into public use before McCormick applied for his patent. His attempt to carry this doctrine of the Comptograph Case back to cover his invention, which, according to his story, might have been placed of record in the Patent Office, prior to Dean's application, is not sustained by that decision. He had taken no steps, and there would not exist the ground for equitable estoppel alleged by the court in that case. McCormick was himself negligent. Equitable estoppel could hardly be based upon what two men held locked up in their minds. He who would invoke this doctrine must have himself done something—not thought something. Moreover, Dean was the first to give the matter to the public. Nor is there any satisfactory evidence of actual or implied abandonment on Dean's part. The record shows he had no such intention. He hoped to use it to his own advantage. Under the statute the burden of showing abandonment is upon him who asserts it. In Victor Talking Machine Company v. American Graphophone Company (C. C.) 140 Fed. 866, the court says:

"Nor, indeed, should evidence of abandonment rest upon doubtful or controverted inferences."

In the Eighth Circuit it has been held that "clear evidence of an intention to dedicate an improvement to the public is indispensable to establish abandonment," and "the patent in suit and the application upon which it is based are persuasive proof that Ide never intended to dedicate the improvement they secure to the public." Ide v. Trorlicht

D. & R. Carpet Company, 115 Fed. 144, 53 C. C. A. 348. "All reasonable doubt must· be solved in favor of the patent." Crown Cork & Seal Company v. Aluminum Stopper Company (C. C.) 108 Fed. 850. Abandonment rests upon the intention of the inventor, and should be established by convincing evidence. Mast Foos Company v. Dempster Mill Mfg. Company, 82 Fed. 331, 27 C. C. A. 191. Judged by these principles, the evidence clearly fails to make out a case of abandonment to the public.

It is therefore adjudged that the patent is valid, that defendant's device infringes the same, and that a decree go as prayed.