## TIFFANY v. PAPER PRODUCTS CO.

(Circuit Court of Appeals, Fifth Circuit. October 28, 1918.)

No. 3182.

1. PATENTS ⬅78—ANTICIPATION—PRIOR USE.
    Under Rev. St. § 4886 (Comp. St. 1916, § 9430), use by others of an invention prior to patenting does not invalidate the patent, where the time did not exceed two years prior to the application and the patentee was the first to actually make the invention.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. PATENTS ⬤⟳81—PRIOR USE—EVIDENCE.
    Evidence *held* insufficient to show that the patentee was the first to invent a device which was in use before the patent was granted.

3. PATENTS ⬤⟳328—INVENTION—WHAT CONSTITUTES.
    The Gess patent, of March 7, 1911, No. 986,379, for an improvement in the construction of a cone tube for use in knitting machines as a support for masses of yarn, was invalid; there being no invention, as the improvement involved only mechanical skill.

4. PATENTS ⬤⟳17—INVENTION—SKILL INVOLVED.
    The design of the patent laws is to reward those who make some substantial discovery which adds to our knowledge, etc., but it was never the object of those laws to grant a monopoly for every trifling device or shadow of a shade of an idea which would naturally occur to any skilled mechanic.

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Bill by Henry L. Tiffany against the Paper Products Company for infringement of patent No. 986,379. From a decree dismissing the bill (244 F. 178), complainant appeals. Affirmed.

Frederick L. Emery and Irving U. Townsend, both of Boston, Mass., and Robert C. Alston, of Atlanta, Ga., for appellant.

John M. Coit, of Washington, D. C., and Wm. H. Trawick, of Cedartown, Ga., for appellee.

Before WALKER and BATTS, Circuit Judges, and JACK, District Judge.

JACK, District Judge. The appellant has appealed from a decree dismissing his bill of complaint, charging infringement of a patent to one Charles Gess, granted March 7, 1911, on application filed January 3, 1911, covering an improvement in the construction of a cone tube adapted for use in knitting machines as a support for masses of yarn, from which the yarn is drawn to the knitting machine which knits it into fabric.

The cone patented is made of compressed paper or pasteboard with roughened outer surface to hold the yarn, which is wound on it axially as shown in illustration:

At the point of the cone the paper is smooth, and the edges turned in and rounded in an arch or dome shape, so as to practically or quite close the opening in the apex. The improvement on the old cone, which had been in use many years, was in thus smoothing and turning in the point. The new cone, in contradistinction to the old, is generally known as a round-nosed cone; the old cone being generally referred to as a square-nosed cone, though this latter term is misleading, as the point is not square, but circular, and flat, instead of arched, as in the Gess cone.

The chief advantage claimed for the Gess patent is that it removes the sharp edges, which are easily mashed outward, and on which the yarn, as the top of the cone·becomes bare in unwinding, frequently catches and breaks.

In addition to the advantage claimed for the·"round-nosed" cone in the unwinding of the yarn, it is claimed that its arched formation gives it greater strength, so that it stands greater weight and is less apt to be crushed in shipping. This, however, is not one of the advantages claimed for it in the specifications, and the drawing indicates a central opening left in the apex, although the patent suggests that the tip be in-turned "preferably so as to substantially, if not wholly, close said tip end."

The fundamental purpose of the patentee was to make a cone from which all of the yarn could be unwound, eliminating the danger of the last few rounds catching and breaking on the edge of the cone; hence the name which he gave it, "Knitall."

The sole question at issue is the validity of the patent. The trial court, in dismissing the bill, held that the improvement in the cone did not involve invention, but was merely such an improvement as would have readily occurred to any one skilled in the art.

"Even assuming, then, that this round-nosed cone had not been anticipated in the prior art, if it is a thing which 'would naturally and spontaneously occur to any skilled mechanic or operator, in the ordinary progress of manufacturers,' it is not a patentable invention. The distinction between mere mechanical knowledge or the knowledge of one familiar with the particular art or trade, on the one hand, and the exercise of the creative faculty or the faculty of invention, on the other hand, is at times quite difficult. There may be some difficulty about it here, but it seems to me that the mere inturning of the edges of the square-nosed cone which had been in use for many years, and turning it in so that the ragged edges of the square-nosed cone would not be there to intercept the movement of the yarn or thread, is a thing which would occur readily to any one skilled in the art or even reasonably familiar with the business of spinning yarn and adapting the same to be used readily in knitting mills. It is not right to the public to class it as having been such an invention or discovery as is patentable."

The evidence shows that Gess' idea was not a new one. It had been applied by McCausland in the cop tube many years before. The cop tube, like the cone, was, and still is, used as a support for yarn. McCausland's patent specifically provides for the turning in of the edge of the smaller end of the tube (see illustration) and the same idea is also found in several wooden bobbins with rounded noses.

The Gess Cone.                    McCausland Cop Tube.

It has, for a long time, been the custom to cap the "square-nosed" cone with a button or ball, of acorn shape, with a stem which fits down into the hole in the apex of the cone, thus giving the top of the "square-nosed" cone the same rounded, arched, shape as the Gess "round-nosed" cone.

Plaintiff, Tiffany, himself testified that he had seen many of these "acorns" used, before the Gess cone came on the market, entirely doing away with their use. With the acorn inserted, the cones were practically the same, save that the Gess cone consisted of only one piece,

and the square-nosed cone of two. Combining the two into one did not involve invention.

Not only was Gess' idea in rounding the nose of his cone utilized long prior by McCausland in his cop tube, and by many manufacturers in the use of the acorn device, but the record fails to show that Gess was even the first to apply this old idea in the manufacture of cones. The evidence shows that the same McCausland who invented the cop tube, as early as September, 1909, over a year prior to Gess' application for patent, January 3, 1911, had installed a machine for the purpose, and was turning in the edges of secondhand cones.

[1, 2] The plaintiff claims, however, that such use by others under section 4886 of the Revised Statutes did not invalidate the patent, where the time did not exceed two years prior to the application. This is true, provided the patentee was the first to actually make the invention; but there is no proof in the record to show the date of the invention. Gess was not a witness. The only dates shown in the record are the dates of the application for the patent and the date the patent was issued. The record shows that plaintiff, Tiffany, who later became the assignee of Gess, as early as April, 1909, contracted with the Pairpoint Corporation to manufacture a number of these round-nosed cones. There is no evidence, however, to show any privity between Tiffany and Gess at the time, or that Tiffany acted as the agent or the licensee of Gess. The only testimony bearing on this point is that of Shurtleff, of the Pairpoint Corporation, who testified that Tiffany "discovered that a round-pointed, smooth-finished cone, that was closed at the tip end, would be a great improvement." He was asked by counsel for the plaintiff in what sense he used the word "discovered," and replied:

"He (Mr. Tiffany) first brought it to our attention, though I understand that the discovery was made by Mr. Gess."

Shurtleff does not state that he understood, from Tiffany or any one else, at the time the order was given, that the invention was that of Gess. It is only clear that he so understood at the time of the trial. Neither does Tiffany, who was a witness, testify that he was acting for, or as the licensee of, Gess. From the mere fact that he afterwards became the assignee of Gess and had the patent issued to him, it would not necessarily follow that he was acting for Gess at the time he made the contract with the Pairpoint Corporation. He may have gotten the idea from Gess, or from a third person.

[3, 4] Regardless, however, of the question as to who first conceived the idea, or put it into effect, it was but a simple and natural step in the progress of the art, and the patent should not have issued.

It is evident that the in-turning of the small end of the cone tube constituted a distinct improvement; but it required no inventive faculty, because of the very fact that it was so evident. It was but the natural thing to do. The evidence shows that employés, in factories using the square-nosed cones, frequently, as the yarn was wound off, pushed in the edges of the points with their fingers. The advantage of having the point turned in was thus obvious, and such as would, in due course, suggest itself to any skilled mechanic.

Gess noticed that the edge of the top of the cone, while the yarn was being unwound, had a tendency to protrude outward in the way of the yarn. His idea was simply to bend it inward out of the way. This required merely the brain of a skilled workman, and not the genius of an inventor. The patentee had the foresight to see that this very simple and natural evolution of the cone tube would be of commercial value; but such business acumen did not make the idea patentable.

As was said by the Supreme Court in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438:

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers, who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accounting for profits made in good faith."

And again in Pope v. Gormully, 144 U. S. 254, 12 Sup. Ct. 643, 36 L. Ed. 426:

"They appear to involve such immaterial changes as would be required to adapt a known device to use in a combination with other elements already existing, and such as would occur to any skilled mechanic. Indeed, the object of these patents, and the same remark may be made of all, or nearly all, involved in these suits, seems to have been principally to forestall competition, rather than to obtain the just rewards of an inventor."

We are of the opinion that there is no error in the decree of the lower court, and the same is affirmed.