## ABRAHAMS v. UNIVERSAL WIRE CO., Inc.

(District Court, E. D. New York. February 10, 1926.)

1. Patents ⬅78—Prior use to invalidate patent must antedate invention, or have been more than two years before date of filing application.

Prior use to invalidate a patent must antedate invention of patent in suit, or it must have been more than two years before date of filing application for patent.

2. Patents ⬅129—Utility of patented combination cannot be denied by one who has adopted it.

Utility of a patented combination cannot be denied by defendant who has seen fit to adopt the precise thing patented.

3. Patents ⬅26(2)—New combination of old elements producing new and useful results is indicative of invention.

New combination of old elements by which new and useful result is produced without skilled labor or expensive materials is indicative of invention.

4. Patents ⬅118—Patent need not describe all possible modes of application in order to obtain best results.

Patent need not describe all possible modes of application in order to obtain the best results, which one skilled in art could determine.

5. Patents ⬅87—Duty rests upon defendant to prove abandonment beyond reasonable doubt.

Duty rests upon defendant to prove abandonment beyond reasonable doubt.

6. Patents ⬅310(7)—Notice required for defense of abandonment must be given by defendant.

Notice required under Rev. St. § 4920 (Comp. St. § 9466), before proving defense of abandonment, must be given by defendant.

7. Patents ⬅328—1,501,032 for acoustic horn, held valid and infringed.

Patent No. 1,501,032, for acoustic horn, claims 1 and 2, held valid and infringed.

**8. Patents ☞319(1)—Plaintiff may recover gains and profits of defendant in damages suffered, notwithstanding that no prayer for recovery of damages suffered by licensees.**

That complaint in patent infringement suit does not pray for recovery of damages suffered by licensees does not preclude plaintiff from recovering gains and profits of defendant and damages suffered by plaintiff, where it does not appear that any one had any interest, legal or equitable, in patent sued on, or that licensees were other than licensees at sufferance.

In Equity. Patent infringement suit by Max Abrahams against the Universal Wire Company, Inc. Decree for plaintiff.

Stockbridge & Borst, of New York City (Victor D. Borst and Max D. Farmer, both of New York City, of counsel), for plaintiff.

Mock & Blum, of New York City, for defendant.

CAMPBELL, District Judge. The plaintiff sues to restrain an alleged infringement of patent No. 1,501,032, issued by the United States Patent Office to Max Abrahams, for acoustic horn, dated July 15, 1924. The defendant answered interposing the defenses of invalidity and noninfringement.

The patent relates to an acoustic horn composed of a textile fabric with a pile surface which is impregnated with a water soluble paste of which glue and dextrine are cited as examples. The type of underwear known as fleece-lined is mentioned as a preferred fabric, but the patent is not limited to it; on the contrary, it states "various other fabrics may be employed."

In the patent in suit the heavy textile fabric is cut and stitched in the desired shape and size or otherwise fashioned and stretched over a form or mold "which holds the fabric expanded and in proper shape," and the stretched fabric is then impregnated with a filler of paste or glue, such as dextrine paste, which paste may be formed by a mixture of glue and dextrine, or dextrine alone may be used. The mold with the impregnated sleeve thereon is then placed in an oven and "baked," as described in the patent, although it is not in fact cooked, but is dried to harden the filler or impregnating material. After the drying, the hardened product is removed from the oven and mold, and the patentee, at least, prefers to then rub over the surface a light coat of the water soluble paste as a filler to cause the dry product to have a smooth surface, and the horn is then allowed to dry and harden in the air or is baked in the oven.

The plaintiff in the commercial product uses two sleeves of fleece-lined material of the kind known as fleece-lined underwear; the first being drawn on the mold or form having its fleece surface on the outside. After this sleeve is thoroughly impregnated with the water soluble paste or filler, another sleeve is drawn over the first with the fleece surface on the inside in contact with the first sleeve and likewise impregnated with said paste or filler, and the same is baked or dried as in the patent described, and after drying and removing the horn from the mold, the filler is applied as described in the patent and the horn dried.

The plaintiff does not individually manufacture or sell his products, but the same are manufactured by a corporation, the Aleon Radio Products, of which he owns the controlling stock, and the product is sold by a corporation, the Racon Electrical Company, of which he owns a majority of the stock.

Both claims of the patent in suit are in issue, and they read as follows:

"1. An acoustic horn comprising a base form of textile fabric with a pile surface and having the desired shape and size, said form being impregnated with a water soluble filler giving rigidity to the form.

"2. An acoustic horn comprising a base form of textile fabric with a pile surface and having the desired shape and size, said form being impregnated with a hardened filler of glue and dextrine, and having a surface finishing coating of a water paint."

The defendant offered in evidence the following patents of the prior art:

United States patent No. 1,282,004, issued to Lillian J. Shearer, for doll's head and process for making same, dated October 15, 1918, discloses the use of stockinet for unbreakable doll's head. Two layers of the stockinet material saturated with a paste preferably composed of starch and salt are placed upon a form to dry, and when dry are removed and painted.

United States patent No. 1,315,488, issued to Ira S. Franklin, for closet-seat and method of making the same, dated September 9, 1919, discloses the use of a plurality of sheets of fibrous sheet material such as paperboard used for bookbinding, the proximate surfaces of which are coated with a glue glycerin and bichromate of potash or bichromate of soda properly assembled and subject to pressure.

United States patents issued to John A. Wilson, No. 1,406,710, dated February 14, 1922, No. 1,425,306, dated August 8, 1922, and No. 1,425,307, dated August 8, 1922, disclose coated fabric and the process of making same, but not the making of horns.

United States patent No. 1,475,623, issued to Henry C. Egerton, for phonograph horn, etc., dated November 27, 1923, which was cited by the examiner in the Patent Office, as appears by the file history of the patent in suit, discloses the preferred use of one or more layers of elastic fabric, such as knit cotton fabric impregnated or coated with dried bakelite varnish composition and cured under considerable pressure. Ribbed or other knit fabric is commended because of its high degree of elasticity, and under some conditions it is recommended where a more uniform or better finish is desired on the exposed surface of the horn with a unitary narrowed or fashioned knit fabric layer which may sometimes have its surface napped or combed.

United States patent No. 1,507,711, issued to Albert E. Pollock and William P. Horn, for process of making plastic articles. This patent is not prior art, and in any event the patentees have conceded priority to Abrahams in an interference the issue of which was the subject-matter of the patent here in suit.

British patent No. 10,952, A. D. 1904, issued to William Robertson Gaff, for improvements in horns or trumpets for phonographs, graphophones, musical instruments, and the like, discloses the use of buckram, canvas, or other like woven material, painted, varnished, or otherwise prepared. The material after weaving or shaping is preferably prepared with a suitable stiffening preparation.

British patent No. 20,631, A. D. 1908, issued to Lovell Newton Reddie, for improved process and apparatus for the manufacture of amplifying horns. This patent relates to the process and apparatus for manufacturing horns of wood or other fibrous material. A suitable material is said to be two layers of veneer glued together.

British patent No. 14,032, A. D. 1910, issued to Emil Heinrich Heintze, for sound conductor for graphophones and such like instruments, cited by the patent examiner as appears by the file history of the patent in suit, discloses a sound conductor consisting of a funnel or cone of wood, felt or textile stuff, the threads or fibers of which are loosened by steam and the body treated with a moist, thin liquid solution of resin, for instance, shellac, and when completely impregnated it is put in a drying oven until the resin or lac-material seethes, and is then cooled.

British patent No. 100,710, issued to Frederick Savage, for improved horn or trumpet for talking machines and the like, dated June 29, 1916, discloses a horn or trumpet built up of strips of sheets of paper, cardboard, strawboard, and the like; the outsides of the strips first laid on the block or model being coated with hot melted size, the remaining strips of sheets being immersed into boiling size and laid one over the other until the desired thickness is obtained. The trumpet is then removed and dried in an apartment heated to 80 to 100 degrees.

None of these patents show a material having a pile or fleece impregnated with a water soluble or any kind of material which is used in an acoustical horn, and none of them show a horn made of any textile fabric impregnated with any water soluble filler. Some of the patents cited do not relate to horns, and those that do disclose horns made of a different fabric and impregnated with a different material than those claimed in the patent in suit. Defendant, however, contends that the patent in suit was anticipated by horns made by the Mannequin Company.

The parties stipulated on the trial for the purposes of this case, but not otherwise: "(1) That not later than September 1, 1923, the Mannequin Company made for Inter-Ocean Radio Corporation, loud speaker horns composed of two sleeves of fleece-lined cloth impregnated with a water soluble filler which gave rigidity to the horn, and that these horns so made by the Mannequin Company for Inter-Ocean Radio Corporation were substantially like defendant's horn, Exhibit No. 2, with respect to their composition."

As the application for the patent in suit was not filed until February 28, 1924, the horn so stipulated to have been made by the Mannequin Company not later than September 1, 1923, would anticipate the patent in suit, if the defendant's horn (Exhibit No. 2) would otherwise infringe the patent in suit, but in order to antedate the said Mannequin horns, the plaintiff attempted to carry back the date of invention of the patent in suit to December, 1922.

The aforesaid stipulation further provided: "(2) That plaintiff, Max Abrahams, in the latter part of the year 1922 constructed seven lamps with radio receiving units built therein, all substantially like Plaintiff's Exhibit No. 4 for identification; that three of these lamp sets were sold by the plaintiff in December, 1922, and January, 1923; that one of these lamp sets was sold by plaintiff in June, 1923, which last-named lamp set was later returned to the plaintiff by the purchaser who was repaid the purchase price by

plaintiff; that one of these lamp sets was on exhibition at a radio show held in Madison Square Garden, New York City, in December, 1922; that three of these lamp sets are now on the floor of plaintiff's place of business at No. 14 Greene street, New York City."

The defendant reserved the right to object to the competency and pertinency of that exhibit and similar exhibits as to reduction to practice, on every ground; whereupon the said Exhibit 4 for identification was received in evidence as Exhibit 4.

The date of the making, selling, and exhibiting of the horns like Exhibit 4 at a time long prior to the making of the Mannequin horn is established by such stipulation, and the horn itself, being one of the seven manufactured by the plaintiff at the time stated, speaks for itself. In addition to which we have the testimony of the plaintiff and his witness Schwartz as to the manner of constructing the horns, that they were made of fleece cloth stiffened with glue, dextrine, and water. We also have the plaintiff's testimony as to the purchase by him of the fleece-lined underwear to make the horn, and his receipt from Mr. Quint for the payment therefor. We also have the testimony of the restaurant keeper in whose ovens the horns were baked, that is, dried, and the testimony of Mr. Friedman, the auctioneer, who was in the restaurant at the time and remembered seeing the horns brought in to be baked.

While I do not think there was much probative force to the testimony of Friedman, still it fits in with the testimony of the other named witnesses, who I believe are telling the truth, notwithstanding some inconsistencies in the testimony of Schwartz.

[1] Prior use to invalidate a patent must antedate the invention of the patent in suit, or it must have been more than two years before the date of filing the application for the patent. Tiffany v. Paper Products Co., 253 F. 953, 165 C. C. A. 395.

Clearly, the use by the Mannequin Company was not until the summer of 1923, whereas the date of invention of the patent in suit was undoubtedly as early as December 31, 1922. The plaintiff had been engaged in the business of manufacturing floor oilcloth, and from the knowledge and experience gained while in that business he tried first to make a horn of the proper design out of burlap impregnated with glue and dextrine, but this proved to be unsatisfactory, and it was then that he purchased the fleece-lined underwear and proceeded to make the horns for the seven crystal radio receiving sets. One of these horns is Exhibit 4 and another is Exhibit 14. The crystal radio sets as made were expensive, the one sold to the Peerless Light Company having been sold for $350, and this naturally restricted the sales, as the set, arranged as it was on a large pedestal, would only be purchased by one having large rooms and in a position to pay that sum.

The horns made by Stevens were not anticipations of the patent in suit, and I agree with him that the horn he made in buckram was an entirely different thing from the horn described in the patent in suit. The same may also be said of the sound amplifiers made by Stevens of buckram or burlap, and as to the horn which he sold to Betts & Betts, in September, 1923; that is, too, late to be considered for any purpose. The shellac horns presented by the defendant are not anticipations of the patent in suit, nor do they constitute prior art. They are not made according to Heintze's British patent, No. 14,032, because that does not disclose fleece-lined material, and they do not anticipate the patent in suit because they are not impregnated with nor are they subsequently coated, after baking, with a water paste.

[2] The utility of the patented combination cannot be denied by the defendant, which has seen fit to adopt the precise thing patented. Boyce v. Stewart-Warner Speedometer Corporation, 220 F. 118, 136 C. C. A. 72.

The patent in suit does not represent the substitution of one old and well-known material for another, but is for a new combination of materials, in which fleece-lined material, the properties and qualities of which for the purpose of horn construction had never before been known, was applied and adapted.

[3] This is a new combination, even if the elements are held to be old, by which a new and useful result is produced, in that a horn, the acoustical properties of which are as good as any, is constructed without skilled labor, expensive machines, or other equipment being required, and the materials entering into its combination are inexpensive. In addition, there is a uniformity of product in the long run, and it possesses the ability to retain its form and tone qualities under all conditions which it would meet in use. These are indicia of invention. Dalton v. Nelson, Fed. Cas. No. 3549, 13 Blatchf. 357; George Frost Co. v. Samstag, 180 F. 739, 105 C. C. A. 37.

[4] The defendant contends that the dis-

closure of the patent is not sufficiently complete with reference to the composition of the water soluble filler, but it does not seem to me that the patentee was bound to give a formula specifically describing the relative quantities of glue and dextrine, because it appears from the testimony that in very damp places it may be better to use dextrine alone, and by the same process of reasoning it would appear that it might be better to vary the proportions of glue and dextrine in other places, and these are matters which one skilled in the art could well determine, and it is not necessary in the patent to describe all the possible modes of application in order to obtain the best results. Minerals Separation, Ltd., v. Hyde, 37 S. Ct. 82, 242 U. S. 261, 61 L. Ed. 286.

It makes no difference that the plaintiff may have found a paste suitable for his purposes which he uses, containing glue and dextrine with other elements, manufactured by a maker of glues and pastes, more suitable for large commercial production and cheaper than he could manufacture it, because the only question is whether the paste described in the patent will make a horn answering the definition of the claims. The testimony has answered that question in the affirmative, because I am convinced that Exhibit 14 was made in 1922, of the materials described in the patent, and is still rigid, and this patent should not be declared invalid for indefiniteness, or for insufficiency of disclosure. Carnegie Steel Co. v. Cambria Iron Co., 22 S. Ct. 698, 185 U. S. 403, 46 L. Ed. 968; Expanded Metal Co. v. Bradford, 29 S. Ct. 652, 214 U. S. 366, 53 L. Ed. 1034; Van Epps v. United Box Board & Paper Co., 143 F. 869, 75 C. C. A. 77; Westinghouse Electric Mfg. Co. v. Montgomery E. L. & P. Co., 153 F. 890, 82 C. C. A. 636.

[5] The defendant contends that there was an abandonmet by the plaintiff and the duty rests upon the defendant to prove such abandonment beyond a reasonable doubt. Kellogg Switchboard & S. Co. v. International T. Mfg. Co. (C. C.) 158 F. 104. This the defendant has utterly failed to prove, because the evidence shows that the plaintiff, through Mr. Foote, was trying to dispose of the crystal radio sets during 1923, and started to manufacture horns in quantities as soon as he received a large order.

The defendant also failed to allege abandonment as a defense, as required by statute.

Under section 4920 of the Revised Statutes (Comp. St. § 9466), the defendant had the right to plead the general issue, and, having given notice in writing to the plaintiff or his attorney 30 days before, may prove on the trial five enumerated defenses, the fifth of which is as follows: "That it had been in public use or on sale in this country for more than two years before his application for a patent, or had been abandoned to the public."

[6] The notice required by the statute must be given by the defendant. Western Electric Co. v. Sperry Electric Co., 58 F. 186, 192, 7 C. C. A. 164; Warren Featherbone Co. v. Warner Bros. Co. (C. C.) 92 F. 990, 991. No such notice was given by the defendant.

The defendant has not rebutted the presumption of validity of the patent in suit, and the weight of the presumption of priority and novelty which arises from the granting of the patent has been greatly increased by the concession of priority by Pollock & Horn to Abrahams in their settlement of the partially litigated interference declared by the Patent Office. Inasmuch as I am not laboring under any doubt, it seems unnecessary to enter into any extended consideration of the question of the commercial success of the patent.

[7] The patent is valid, and there remains for further consideration only the question of infringement.

Claim 1 of the patent in suit reads upon the defendant's structure, Plaintiff's Exhibit 2. The horn is made of fleece-lined material impregnated with a water soluble paste and baked. This claim is clearly infringed.

The infringement of claim 2 depends upon whether the defendant's structure was impregnated with a hardened filler of glue and dextrine and having a surface finishing coating of a water paste. The paste used by the defendant, which was sold to it by Mr. Nach, contains glue and dextrine together with other ingredients. Mr. Wilson testified that he had sold quite a few horns on which additional paste was rubbed after the horns were baked. "Paint" is defined in Funk & Wagnall's New Standard Dictionary, as follows: "A solid color or pigment either dry or mixed with a vehicle, as oil or water, intended to form a surface coating as distinguished from a dye or stain." This definition is satisfied by a paste dissolved in water.

Claim 2 of the patent provides, in part, "and having a surface finishing coating of a water paint." The purpose is to fill in the ribs and make a smooth exterior surface,

and Mr. Wilson testified under cross-examination that he used this "as a filler" and "to fill up grooves and holes in the horn." According to his testimony, he did sell quite a few horns on which such filler had been used. The infringement of claim 2 is clear, because plaintiff is entitled to be protected against further infringement even though the defendant claims to have discontinued that process, or that he found the addition of the water paint coating to be unsatisfactory.

Defendant contends that on the authority of Brookfield v. Novelty Glass Mfg. Co., 170 F. 960, 96 C. C. A. 127, plaintiff is not entitled to an accounting. I do not think the decision in that case goes that far, but it seems to me that the plaintiff is entitled to an accounting, in addition to the profits which the defendant has realized, to determine the damages which the plaintiff himself has suffered by reason of the appropriation by the defendant of the plaintiff's rights under said patent.

The allegations of the plaintiff's bill of complaint are not sufficient to warrant any recovery by the plaintiff of any damages suffered by his licensees, and further plaintiff does not pray for the recovery of any damages suffered by the licensees, but only the gains and profits of the defendant, and damages suffered by the plaintiff.

[8] This, however, does not prevent the plaintiff from recovering the gains and profits of the defendant and damages suffered by the plaintiff, because it does not appear that any one has any interest, legal or equitable, by assignment or otherwise, in the patent sued on, or that the licensees mentioned are other than licensees at sufferance. Tilghman v. Proctor, 8 S. Ct. 894, 125 U. S. 136, 143, 31 L. Ed. 664.

The patent is valid, and both claims have been infringed by the defendant.

A decree may be entered in favor of the plaintiff, with the usual order of reference.

Settle decree on notice.