**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| KAREN CALLAHAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-1099-BWD |
| | ) | |
| JOSEPH NELSON, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING APPLICATION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL
AND MOTION FOR A STAY PENDING APPEAL**

WHEREAS:

A.    Joseph Nelson ("Respondent") has applied for certification of interlocutory appeal (the "Application") of this Court's November 14, 2025 Opinion on Partition of Companion Animal (the "Opinion") and Order Appointing Partition Trustee. Resp't's Appl. for Certification of Interlocutory Appeal [hereinafter Appl.], Dkt. 32.

B.    This action concerns a petition to partition a Goldendoodle named Tucker. *Callahan v. Nelson*, 2025 WL 3181943 (Del. Ch. Nov. 14, 2025) [hereinafter Op.].  Karen Callahan ("Petitioner") and Respondent acquired Tucker while they were dating. *Id.* at *2.  Petitioner and Respondent ended their relationship in May 2022, and Petitioner has not seen Tucker since. *Id.*  The Delaware Superior

Court previously determined that Petitioner and Respondent have joint ownership interests in Tucker. *Id.* at *2 n.4.

C.     On October 28, 2024, Petitioner initiated this action through the filing of a Petition for Partition (the "Petition"), seeking an order for partition of Tucker. Dkt. 1. Respondent moved to dismiss the Petition, arguing that the Court should refuse to order the "unprecedented" relief of partitioning a companion animal. Dkts. 4, 7.

D.     On May 7, 2025, the Court issued a Memorandum Opinion Denying Motion to Dismiss Petition for Partition (the "Memorandum Opinion"), denying Respondent's motion to dismiss. *Callahan v. Nelson*, 2025 WL 1326719 (Del. Ch. May 7, 2025) [hereinafter Mem. Op.]. The Memorandum Opinion explained that, although Delaware's partition statute governs only the right to partition real property, courts of equity also have historically upheld the right of a tenant in common to seek a partition of personal property. *Id.* at *2. Because the law views a pet as personal property, a jointly owned pet must be subject to a partition remedy. *Id.* The Memorandum Opinion reasoned that, without an equitable partition remedy, the parties might remain trapped in joint ownership of their pet indefinitely, notwithstanding their mutual desire to part ways. *Id.* at *3. The Memorandum Opinion concluded that "crafting a fair and orderly process to resolve the rights of these co-owners so they can move on is in the best interests of everyone involved,

2

including Tucker." *Id.* Although the Court did not decide the appropriate partition procedure at that time, the Memorandum Opinion stated that "[t]he right procedure w[ould] result in one party owning Tucker and the other receiving a monetary award." *Id.* at \*1.

E.    The Court directed the parties to meet and confer on an appropriate partition procedure, but the parties were unable to reach agreement. Op. at \*3. On June 20, Petitioner filed an opening brief advocating for a "transparent auction" through which the party willing to pay the highest price to the other will acquire Tucker. *Id.* On July 21, Respondent filed an answering brief in opposition, arguing that the Court should award ownership based on an evaluation of Tucker's best interests. *Id.* On November 7, the Court held an evidentiary hearing to provide the parties an opportunity to supplement their legal arguments with evidence to support their positions on the appropriate partition procedure. *Id.*

F.    One week later, on November 14, the Court issued the Opinion. The Opinion acknowledged that although Delaware law recognizes a common law right to partition personal property, "[t]his Court has never partitioned a pet, so the procedure for doing so is uncharted." *Id.* at \*4. The Opinion explained, however, that the Court of Chancery has broad latitude to exercise its equitable powers to craft an appropriate remedy. *Id.*

G.    The Opinion considered several potential partition procedures. *Id.* at *4. It noted that under Delaware's real property partition statute, the default procedure is a physical, in kind, division of the property. *Id.* at *1. That procedure would not work for a living being. *Id.* at *4. The Opinion further considered that under the partition statute and at common law, the alternative procedure for partition is a sale at "public vendue" intended to put the property to its highest and best use. *Id.* The Opinion rejected the concept of a public auction because the parties attach far more value to Tucker than would any member of the public. *Id.* at *4 n.19.

H.    The Opinion also considered alternative partition procedures that the parties had not raised. *Id.* It noted that an appraisal of Tucker's fair market value is unlikely to be helpful given the subjective value each party places on Tucker. *Id.* It also rejected the concept of a "partition in time," which could look like a joint custody arrangement, because the parties no longer wish to be bound to one another and such an arrangement is unlikely to be successful. *Id.*

I.    The Opinion concluded, instead, that when partitioning a companion animal, "our preexisting common law governing property ownership provides the right place to start the analysis." *Id.* at *5. The Opinion therefore "beg[a]n with a presumption that partition of a companion animal should occur through an auction designed to maximize value for the co-owners." *Id.* The Opinion held that such a "presumption may be rebutted, however, because a court of equity has broad latitude

4

to balance various interests and fashion remedies as appropriate." *Id.* The Opinion recognized that "[d]ogs are property, but they are not furniture; they are living, sentient beings with value that transcends economics. If the equities of a particular case require awarding ownership to one owner over another—particularly to prevent harm to a sentient being—a court of equity is bound to consider those facts as well." *Id.*

J. Turning to the specifics of this case, the Opinion decided that the facts here "do not support deviating from the common law presumption of a value-maximizing auction," explaining that "[i]t is clear from the evidence that both Petitioner and Respondent care deeply for Tucker, and that either one would make a suitable pet owner." *Id.* at *6.

K. The Court therefore appointed a Partition Trustee to conduct a private auction to determine Tucker's ownership. Order Appointing Partition Trustee, Dkt. 29. The Court did not decide how the auction will work. Instead, in its Order Appointing Partition Trustee, the Court directed the parties to "meet and confer with the Partition Trustee on procedures to govern the auction." *Id.* at 2. The Court instructed that "[i]f the parties cannot agree on such procedures, the Partition Trustee shall file a report with the Court recommending procedures to govern the auction, and the parties may file written responses to the Partition Trustee's report within fourteen days of the report." *Id.*

5

L.	Respondent filed the Application on November 21.	Separately, Respondent filed a Motion for a Stay Pending Appeal (the "Motion").  Resp't's Mot. for a Stay Pending Appeal [hereinafter Mot.], Dkt. 33.  Petitioner opposed the Application and the Motion on November 26.  Pet'r's Resp. in Opp'n to Resp't's Appl. for Certification of Interlocutory Appeal, Dkt. 37; Pet'r's Opp'n to Resp't's Mot. for Stay Pending Appeal, Dkt. 38.

NOW, THEREFORE, IT IS HEREBY ORDERED, this 1st day of December 2025, as follows:

**The Application Is DENIED.**

1.	Supreme Court Rule 42 governs applications for interlocutory appeals, cautioning that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."  Supr. Ct. R. 42(b)(ii).  "Applications for interlocutory review are addressed to the sound discretion of this Court and are accepted only in extraordinary circumstances."  *Robino-Bay Ct. Plaza, LLC v. W. Willow-Bay Ct., LLC*, 941 A.2d 1019 (Del. 2007) (TABLE).[1]

2.	Rule 42 establishes a two-step test for deciding whether to certify interlocutory appeal.  Supr. Ct. R. 42(c).  The Court must first determine whether

---

[1] Though this decision referred to the Supreme Court in its use of "this Court," trial courts exercise that same discretion in recommending whether interlocutory appeals should be certified.

"the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment." Supr. Ct. R. 42(b)(i). If that requirement is met, the Court will analyze eight factors to determine whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal." Supr. Ct. R. 42(b)(ii).

3.      The substantial-issue requirement is met when a ruling "decides a main question of law which relates to the merits of the case, and not to collateral matters." *Sprint Nextel Corp. v iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008). The Opinion decided the appropriate procedure for partitioning a jointly owned companion animal. I assume for purposes of evaluating the Application that the Opinion resolved a substantial issue of material importance because it affected the primary matter remaining in this action. Even assuming Respondent has met the substantial-issue requirement, however, the Application fails because the costs of interlocutory appeal outweigh the benefits.

4.      Rule 42 identifies eight factors to consider when balancing the costs and benefits of an interlocutory appeal. *See* Supr. Ct. R. 42(b)(iii)(A)–(H). Only one favors an interlocutory appeal here. The Opinion acknowledged that it "resolve[d] an issue of first impression under Delaware law," namely, "[w]hen parties wish to end their joint ownership of a companion animal, how should equity act to fairly divide the property interests in their pet?" Op. at *1. The interlocutory

7

order therefore "involve[d] a question of law resolved for the first time in this State." Supr. Ct. R. 42(b)(iii)(A).

5. No other factors under Rule 42 support certifying an interlocutory appeal. There are no conflicting trial court decisions addressing the question of law; the issue does not relate to the constitutionality, construction, or application of a statute;[2] the ruling does not concern the controverted jurisdiction of the Court of Chancery; it did not reverse or set aside a prior decision; it did not vacate or open a judgment; and review will not terminate the litigation. *See* Supr. Ct. R. 42(b)(iii)(B)–(G).

6. Respondent argues that "considerations of justice strongly weigh in favor [of] certifying an interlocutory appeal" because if the Delaware Supreme Court reverses the Opinion, "then an auction is unnecessary," potentially avoiding "substantial useless effort." Appl. ¶¶ 22–23 (invoking Supr. Ct. R. 42(b)(iii)(H)). Respondent's cost-saving argument is overstated. What remains in this action is as follows. The parties will meet and confer with the Partition Trustee on procedures to govern the auction; if the parties cannot agree, the Partition Trustee will

---

[2] Respondent argues that the Order "implicate[d]" Title 13, Section 1513(g)(2) of the Delaware Code—a statute permitting the Family Court to consider certain factors when determining ownership of a jointly owned pet in a divorce proceeding—but concedes that "the Court did not directly apply [that] statute." Appl. ¶ 20. Section 1513 does not apply to partition proceedings in the Court of Chancery, and the Order did not purport to construe or apply that statute.

recommend a procedure; the Court will resolve any disputes; and the auction will occur promptly thereafter. That process should not entail significant cost, particularly compared to the substantial sums the parties have already expended in litigation across four courts.

7. On the other hand, interlocutory review threatens delay and risks unfairness to the Petitioner. Delaying appeal until a final judgment will not harm Respondent because he is currently in possession of Tucker. But for Petitioner, who has not seen Tucker in over three years, unjust delay poses the risk that even if she prevails, her time with Tucker will be unduly limited.[3]

8. For the foregoing reasons, the Application is DENIED.

**The Motion For A Stay Pending Appeal Is DENIED.**

9. Under Court of Chancery Rule 62(d), "[s]tays pending appeal and stay and cost bonds shall be governed by article IV, § 24 of the Constitution of the State of Delaware and by the Rules of the Supreme Court." Ct. Ch. R. 62(d). "[A] motion for stay must be filed in the trial court in the first instance. . . . A stay or an injunction pending appeal may be granted or denied in the discretion of the trial court, whose decision shall be reviewable by [the Delaware Supreme] Court." Supr. Ct. R. 32(a).

---

[3] American country musician and songwriter HARDY sings that "dog years" go "by seven times too fast." HARDY, *Dog Years* (Big Loud Records 2025). The painful reality of this partition action is that the asset in dispute is more ephemeral than most.

10. In assessing whether to grant a stay, the Court must (1) "make a preliminary assessment of likelihood of success on the merits of the appeal;" (2) "assess whether the [movant] will suffer irreparable injury if the stay is not granted;" (3) "assess whether any other interested party will suffer substantial harm if the stay is granted;" and (4) "determine whether the public interest will be harmed if the stay is granted." *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357 (Del. 1998) (citing *Evans v. Buchanan*, 435 F. Supp. 832, 841–42 (D. Del. 1977)).

11. The first *Kirpat* factor "cannot be interpreted literally or in a vacuum." *Grand Acq., LLC v. Passco Indian Springs DST*, 2016 WL 6199007, at *1 (Del. Ch. Oct. 21, 2016) (quoting *Kirpat*, 741 A.2d at 358). Doing so "'would lead most probably to consistent denials of stay motions, despite the immediate threat of substantial irreparable injury to the movant,' because the trial court would be required first to confess error in its ruling before it could issue a stay." *Kirpat*, 741 A.2d at 358 (quoting *Evans*, 435 F. Supp. at 843). "If the other three factors strongly favor interim relief, then a court may exercise its discretion to reach an equitable resolution by granting a stay if the petitioner has presented a serious legal question that raises a 'fair ground for litigation and thus for more deliberative investigation.'" *Id.* at 358 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559

F.2d 841, 843 (D.C. Cir. 1977)). As noted above, the Opinion resolved a novel issue under Delaware law. It therefore raises a fair ground for litigation.

12. Respondent will not suffer irreparable injury in the absence of a stay. Respondent argues that staying the auction "will save substantial time and expense for all parties." Mot. ¶ 12. I disagree. A stay pending appeal would add delay by postponing resolution of the partition, and the moderate expense that could be saved does not present "irreparable harm" warranting a stay.

13. On the other hand, Petitioner will suffer substantial harm if a stay is granted because she has been excluded from Tucker for over three years and because the lifespan of a dog is limited.

14. Respondent argues that "[a] forced transfer of Tucker following an auction cannot easily be undone." *Id.* ¶ 13. Even if true, Respondent's request to stay the results of an auction that has not yet occurred is premature. If Respondent wins the auction, Tucker will remain with him. If he does not, he may seek additional relief at that time.

15. Finally, the public interest will not be harmed if the stay is granted or denied. This factor is neutral.

16. Considered together, the *Kirpat* factors do not favor a stay. The Motion is therefore DENIED.

/s/ Bonnie W. David

Bonnie W. David
Vice Chancellor