### KINNEAR & GAGER CO. v. CAPITAL SHEET-METAL CO.

(Circuit Court, S. D. Ohio, E. D. June 29, 1897.)

1. PATENTS—NOVELTY—BURDEN OF PROOF.
   The patent itself is prima facie evidence of its own validity. The burden is on defendant to show want of novelty by evidence beyond a reasonable question, and doubts on the subject of novelty are to be resolved in favor of the patent.

2. SAME—ANTICIPATION.
   A patent covering a successful and useful panel section in a metallic ceiling is not to be defeated by showing a prior bird-cage bottom, tea tray, or coalvase cover, resembling in mere outline of form the patented panel; these things being wholly foreign to, and not suggestive of, the use to which the patent relates.

3. SAME.
   The Kinnear patent, No. 388,285, for a panel or ceiling section stamped from sheet-metal plates, and used in metallic ceilings, was not anticipated by the Northup patent, No. 330,916, also for a metallic ceiling.

This was a suit in equity by the Kinnear & Gager Company against the Capital Sheet-Metal Company for alleged infringement of a patent for a sheet-metal ceiling panel.

D. F. Patterson and Booth & Keating, for complainant.
Chester C. Shepherd, for respondent.

CLARK, District Judge. This suit is for alleged infringement by defendant, and is brought for injunction, based upon letters patent No. 388,285, granted to William T. Kinnear, of date August 21, 1888. That patent is for a panel or ceiling section stamped from sheet-metal plates, and used in metallic ceilings. The defendant is engaged in the manufacture and sale of metallic ceiling panels, and it is conceded and fully shown by the proof that the defendant is infringing the plaintiff's patent. The only question raised by the pleading and proof is that of patentable novelty. The claim which is alleged to be infringed is claim No. 2 in the Kinnear patent, and is as follows:

"In a ceiling such as described, the panels thereof constructed from continuous sheets, and having margins raised above the body, and a connecting portion between the body of the panel and the margins having rounded corners, substantially as described."

The patent is good on inspection, and the question of novelty then becomes one of fact. Certain general propositions applicable to this

and similar cases may be restated, and must be borne in mind in the determination of the question. The letters patent being regularly issued to the plaintiff makes a prima facie case in favor of the plaintiff, and the burden of proof is on the defense to sustain the allegation of want of novelty, and the proof should be sufficient to show a want of novelty beyond a reasonable question. If reasonable doubt exists as to the novelty, it is to be resolved in favor of the patent. Blount v. Société, 6 U. S. App. 335, 3 C. C. A. 455, and 53 Fed. 98; Walk. Pat. § 76; Coffin v. Ogden, 18 Wall. 120; Cantrell v. Wallick, 117 U. S. 696, 6 Sup. Ct. 970; 3 Rob. Pat. §§ 1022, 1026, note 2. The patent here is one for a new and useful improvement, and is to be so treated. Such being the case, the novelty may be in the mode of operation, or in the end accomplished by the new device; and this novelty is evidenced, among other ways, by the improvement's comparative utility and its success with the public, which are important facts in any case of doubt. It must be remembered, too, that an invention, whether original or an improvement, is not anticipated by a thing which was, in its original form and use, neither designed, adapted, nor actually used, to perform the same function as the thing covered by the patent does; and novelty is not negatived or overcome by any such consideration, nor by showing prior construction of a similar thing for a wholly different and foreign use, not suggestive of the particular use to which the patent is being applied. Walk. Pat. § 68; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825; 3 Rob. Pat. § 963; 1 Rob. Pat. § 117. In Griswold v. Wagner, 37 U. S. App. 171, 15 C. C. A. 525, and 68 Fed. 494, the court, following the case of Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, quoted with approval the rule laid down in that case, as follows:

"But, where the alleged novelty consists in transferring a device from one branch of industry to another, the answer depends upon a variety of considerations. In such cases we are bound to inquire into the remoteness of relationship of the two industries, what alterations were necessary to adapt the device to its new use, and what the value of such adaption has been to the new industry. If the new use be analogous to the former one, the court will undoubtedly be disposed to construe the patent more strictly, and to require clearer proof of the exercise of the inventive faculty in adapting it to the new use,—particularly if the device be one of minor importance in its field of usefulness. On the other hand, if the transfer be to a branch of industry but remotely allied to the other, and the effect of such transfer has been to supersede other methods of doing the same work, the court will look with a less critical eye upon the means employed in making the transfer."

It is perfectly evident that under this rule the attempt on the part of the defendant to defeat the patent by showing a continuous sheet in a bird-cage bottom, or tea tray, coal-vase cover, etc., entirely fails. It is probable that the patent right in many of the more useful inventions of the time could be defeated by considerations such as those, so remote and so foreign. The only resemblance is in the merest outline of form, and there is not the slightest resemblance suggested in the end accomplished, and in the uses to which the two things are applied. The government undertakes by appropriate legislation to encourage inventive genius, and to justify experiment and long-sustained mental efforts, in order that the public may receive the benefit of the time, energy, and expense devoted to bringing out useful in-

ventions in constantly increasing forms of industry with new demands for invention; and to say that a successful and useful panel section in metallic ceiling, with its obvious importance and practical value, may be defeated because the bottom of a bird cage may, in mere outline of form, resemble the thing covered by the patent, is not to afford that protection intended by the law, and is not to keep good faith with the patentee by furnishing protection. It will not do to strike down a patent obviously useful and important to the public by a long-range suggestion of resemblance, while the two things have no practical or just relation to each other whatever, either in mode or time of construction, or importance of use to the public.

The only real difficulty, therefore, presented in the case, and about which there is doubt, is whether the plaintiff's patent was anticipated by the Northup patent, No. 330,916, for a metallic ceiling, of date November 24, 1885. It is conceded by defendant's counsel, and could not be controverted, that the structural form of the Northup panel is substantially different from the one here in question. The contention is that the Northup panel was a continuous sheet, and that the element of a continuous sheet in the plaintiff's patent was therefore anticipated by the Northup patent. This leaves out, of course, the rounded corners in the section which it is claimed was anticipated by the tea tray, bird cage, etc. It is evident, on inspection of the Northup panel, that it is a continuous sheet in no just sense of those terms. The corners are square, and there is at the corners a space cut out, extending entirely through the margin and cornice molding, so that when the panel is finished it is not a continuous sheet at all, in the sense in which the plaintiff's is, and still less is it so when the mode by which the panels are adjusted to each other in the ceiling is considered. So the modes by which the panels are placed in position and attached to each other so as to form a compact ceiling are different. I am satisfied that the ceiling section covered by this patent is a new and useful improvement on the Northup ceiling section, and it is not claimed that any previously patented ceiling section anticipates the present invention. That the panel, as well as the ceiling into which it enters, is a substantial improvement on the Northup patent, it seems to me is obvious. The panel is continuous,—without cuts or separate sheets or pieces. The modes by which they are secured in position in the ceiling and to each other are different, and without cuts or breaks in the sheet, and entirely superior in this and other important points to the Northup patent. In the very nature of the case, a ceiling thus constructed renders the building much more secure against fire, and is an important advance towards fireproof buildings. It is not merely an extension or better mode, but is a new and distinct improvement. The question should be regarded as a practical one, and the validity or invalidity of the patent should be determined, as far as may be, by practical considerations. It would not be difficult, by a hostile and strained course of reasoning, to destroy any patent. I have concluded, therefore, that the patent is good, and that the plaintiff is entitled to the relief sought, and the decree will go accordingly. I may add that I consider the question fairly close, and not free from difficulty; but this seems to be generally the case where the question is

one of novelty, and there exist previous patents at all in relation to the same subject. The difficulty is very largely brought about by differences in the power to correctly perceive the mechanical bearing of the question. In the case cited (Topliff v. Topliff) the court upheld the invention secured by letters patent, while admitting expressly that the question was by no means free from doubt. I feel better satisfied with the result, as I recognize thereby that I do not deny the patentee the just fruits of his time, energy, and study, and also recognize that I have done no injustice to any one else.