# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

**WINGET KICKERNICK CO. et al. v. KEN- ILWORTH MFG. CO.**

(Circuit Court of Appeals, Second Circuit. March 1, 1926.)

No. 151.

**1. Patents ⬳167(1).**

The court may look at specifications and drawings, to determine characteristics and meaning of elements recited in claim.

**2. Patents ⬳157(1).**

Meaning of claims of meritorious patent should not be be limited to literal construction of language of claims in determining infringement.

**3. Patents ⬳54—Experimental efforts, not fully accomplishing desired end, do no not anticipate or limit scope of invention meeting requirements of act.**

Efforts of experimental character leading up to, but not fully accomplishing, desired end, do not anticipate or limit scope of invention, which for first time effectively meets requirements of the art.

**4. Patents ⬳328.**

Patent No. 1,389,067, claims 1, 2, and 5, for an undergarment for women, *held* valid and infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by the Winget Kickernick Company and another against the Kenilworth Manufacturing Company. From a decree for plaintiffs, defendant appeals. Affirmed.

Briesen & Schrenk, of New York City (Hans v. Briesen, of New York City, of counsel), for appellant.

Frank A. Whiteley, of Minneapolis, Minn., for appellees.

Before MANTON, HAND, and MACK, Circuit Judges.

11 F.(2d)—1

MANTON, Circuit Judge. This suit is on claims 1, 2, and 5 of patent No. 1,389,067 for an undergarment for women. The object is to provide an undergarment with a closed crotch and an opening alongside the leg, which shall be adapted to have the leg closed to produce a bloomer construction, and which shall fit the wearer, no matter what the position of the body, without any strain or tension at any point, and which shall be particularly comfortable when worn. It may be either a union garment, consisting of waist and leg portions, or drawers-bloomers only. It is adapted to slip up over the form of the wearer, there being only a side opening along one of the legs, and which is closed by buttons or snaps, or other forms of fastening. The substantial fullness is produced by the combined effect of making the back portion of the garment longer in amount of material than the front portion, and gathering the edges of the back portion to the edges of the front portion, in combination with the provision of a rectangular insertion sewed directly to the center cleft edges of the front member and the curved bottom edge of the back member, whereby the two portions are united to form legs, and at the same time provide a substantial depth of material at the crotch.

It is composed of three pieces—the back member, the front member; and an insert. It is made simple by the fact that the front member is formed with a single slit or cleft at its center, to which the insert is sewed directly, the same being in turn sewed to the bottom curved edge of the back member, whereby legs of substantial length are provided with a markedly full seat portion, and yet the garment will have a straight front, closely fitting the form of the wearer. The garment has the characteristics of the short straight front, straight hanging legs in front,

long spreading rear and seat, differing radically from the front, and particularly having depth rearwardly at the crotch, and the back really suspended at its attachment to the front, and forming a hammock structure, into which the wearer sits, rather than a hard-drawn line extending between the crotch, as existed in the prior art bloomers.

In the early form of bloomers, the front and back members were cut practically identically along the same line, both in extent and shape, and for this reason they were flat, without any depth from front to back. The crotch line was very low hung, coming well down below the crotch line, and they were usually cut with four seams all coming to the center, and the body (back) went in at the center, and the front went in at the center and the back; the seams along the inside of the legs connecting the front and back members. The front and back seams lay in the central plane of the body, from front to back, and the inner leg seams through the leg into the central plane, so that, since the front and back were all the same length, the inner leg seams were of the same length, and therefore the meeting of these seams was at almost exactly the central point of the crotch line. Some of the garments were cut without seams in front, but they were shaped in the same way; they all converged at the crotch line, so that these were distinct characteristics in this kind of garment. This new construction had the effect of producing practically a new article in the art, and also a new result.

Prior patents—to Morris, No. 1,098,960, issued 1914; Johnson, No. 850,013, issued 1907; Lowenstein, No. 241, issued 1881; and Lewis, No. 621,352, issued 1899—are all referred to as prior art. The nearest is the patent to Morris. The difference between it and the patent in suit is that there is not the same co-operative relation with other parts of the garment; that the insert member has not the same co-operative operation with other parts of the garment, and does not serve the purpose of the insert as referred to in the claims of the patent in suit. The resemblance of the Morris patent to that of the patent in suit does not suggest a combination, or the purpose or result of the combination of the patent in suit.

In the appellee's construction, a straight hanging front is produced, in which the fullness produced by the insert all goes to the back, while in the Morris structure the insert simply elongates the front line. In the Morris structure, the purpose of the insert, as it is combined with the other elements, is to increase the length of the rear opening. In the

Morris and Johnson patents there is an insert or strip sewed along the inside of the legs, or across the crotch. There is no rectangular insert and no long rear portion or front member having its center cut along a straight line in either patents. Neither of them accomplish the result which seems to have been appreciated in the art. The patent in suit is a step forward, involving novelty and invention.

The claims in suit provide (a) a back member of ample length; (b) a cut-out or concave portion at the central bottom of the back member, having an edge equal to the length of the rectangular insert, and to which edge the edge of the rectangular insert is sewed; (c) a front having the characteristics of shortness, straightness, and continuity, vertically with the front portion of the legs of the garment, and (d) the front opening exactly in the median line of the front and half the length of the concavely inset edge of the back; and (e) the increased width of material, specifically the rectangular crotch piece of the patent, twice the length of the front opening, and being doubled upon itself, with one edge secured to the edges of the front opening and the other edge secured to the concaved edge of the back.

[1] The appellant argues that there is nothing in these claims which clearly advance the characteristics of a front member and of a back member, but the court may look at the specifications and drawings to determine the characteristics and meaning of the elements recited in the claim. The language does not mean any kind of front member, or any kind of back member, but it is that kind of member, front or back, which is shown and described in combination with the other elements recited in the claims. This describes the principle of construction and the invention to be protected. Troy Wagon Works Co. v. Ohio Trailer Co. (C. C. A.) 272 F. 850; Waterloo Cement Machinery Corp. v. Engel, 240 F. 976, 153 C. C. A. 662.

[2] The appellant insists that the language, "the central portion of the bottom edge concavely curved throughout its length," must be literally construed, and, if so, the appellant does not infringe. The language employed refers to the symmetrical inset portion at the center of the bottom of the back. If this patent is meritorious, its meaning should not be limited to the literalism suggested. Belber Trunk & Bag Co. v. Seward Trunk & Bag Co. (C. C. A.) 279 F. 83.

Reference is made to the file wrapper contents. If the language of the present claims were limited, it is not a limitation as

to the form of curved edge. The feature of the structure described is the symmetrical cut-out portion at the center of the back, and the expression "concavely curved" obviously describes such an inwardly cut-out portion at the center of the back. The Morris patent was considered in the Patent Office and distinguished. It was probably as near a reference as any suggested. It was properly held to be devoid of the principle of construction of the patent in suit.

The appellant's garment provides a short, straight front, with a central opening directly along the median line at the bottom. The parts of the front at either side of this opening are used to form the front of the legs of the garment; the apex of the opening of the median line of appellant's front comes exactly at the front of the crotch of the garment. There is increased width of material provided by means of the rectangular insert, which is connected with the edges of the front opening, so that the top fold of this increased width of material will extend directly back at substantially right angles to the front median line along the crotch of the garment; this top fold being formed by doubling at its center the rectangular strip *(18)* which is exactly double the length of the front central opening.

The appellant's structure embodies a back member having the equivalent of a concavely cut-out portion at the center of its bottom, which is exactly twice the length of the central opening, and is just the length of the side of the rectangular insert, and which cut-out portion is sewed along its edge to the other side of the rectangular strip. The back member, when so united with the rectangular strip and with the side edges of the front member, forms the rear portions of the legs of the garment, and forms a full seat, with fullness at the crotch extending directly back from the front median line of the garment, giving a construction into which the wearer can sit as in a hammock, without strain or pulling, no matter what position the limbs or body of the wearer may assume. The modifications in the patterns of the appellant's garment have no functional meaning, other than to produce the results in appellee's garment. The cut-in at the center of the rear, or bunching caused by fabric at the waist line of the appellant's garment, adds nothing to the value of its garment, and produces no new result or distinctive function therein.

[3, 4] We have examined the claim of prior use of the construction, charged to infringe the appellee's patent. This defense was entirely demolished upon cross-examination, and nothing may be said in its favor. The testimony of prior use of the appellant is unworthy of belief, in the present state of the proof, and we reject it. The patentee gave satisfactory testimony as to her experimental work. We find no basis in the record, justifying the position of the appellant that the garments constructed under the patent in suit were used in any way other than as an experimental garment. Efforts of an experimental character leading up to, but not fully accomplishing, the desired end, do not anticipate or limit the scope of the desired invention, which, for the first time, effectively meets the requirements of the art. Wright Co. v. Herring-Curtiss Co., 211 F. 654, 128 C. C. A. 158; Kicherberger v. American Acetylene Burner Co., 128 F. 599, 64 C. C. A. 107.

Decree affirmed.