**HERZ STRAW CO., Inc., v. SMITH et al.**
**No. 4953.**

District Court, E. D. New York.
Jan. 13, 1931.

Emery, Booth, Varney & Whittemore, of New York City (L. E. Varney, of New York City, and Nichol M. Sandoe, of Boston, Mass., of counsel), for plaintiff.

Fritz Ziegler, Jr., of New York City, for defendants.

GALSTON, District Judge.

This is a patent infringement suit wherein the defendants are charged with having infringed claim 18 of letters patent No. 1,-660,832, granted to E. Conti on February 28, 1928, for a tube-forming machine.

The specification states that the invention contemplates the formation of a continuous tube, the cutting off of predetermined lengths of the tube during the movement of the tube, and the delivery of the cut-off portions from the cut-off mechanism.

The defenses allege invalidity of the claim and noninfringement.

Claim 18 reads as follows: "18. In a tube forming machine, in combination, means for forming a substantially rigid tube, means for continuously feeding the formed tube from said forming means, a rotary cutter mounted to traverse the path of movement of the tube in a fixed plane, a rotary drive means therefor, a spring operatively connecting the drive means and cutter, and means for inhibiting the rotation of the cutter to cause a compression of the connecting spring and then releasing the cutter to cause a quick cutting action thereof under the influence of the said spring, whereby the tube may be severed during the forward movement thereof without distorting or buckling the same."

Resolving the claim into its component elements, it is found that the tube-forming machine consists of:

(1) Means for forming a substantially rigid tube.

(2) Means for continuously feeding the formed tube from said forming means.

(3) A rotary cutter mounted to traverse the path of movement of the tube in a fixed plane.

(4) A rotary drive means therefor.

(5) A spring operatively connecting the drive means and cutter.

(6) Means for inhibiting the rotation of the cutter to cause a compression of the connecting spring and then releasing the cutter to cause a quick cutting action under the influence of the spring.

The defendants' machine undoubtedly has means for forming a substantially rigid tube, which same means also continuously feed the tube; but it is contended that the cutting device of the defendants is unlike that of the patent in suit and functions in a different way.

The cutter in the patent is the element 86, which is provided with a pair of blades 87, and is rigid with a cutter carrier 88 and supported by standards 81 and 82. The cutter of the patent is operated by the actuating element, gear 89. The cutter and the actuating element are relatively rotatable, but are prevented from movement longitudinally of their axes. To give the cutter successive rotative movements at the requisite speed, the inventor provided means for maintaining the cutter stationary during certain periods of the continuous rotation of the gear 89, also means for storing the energy developed by the rotation of the gear 89 during the periods of rest of the cutter, so that, upon the release of the cutter, the cutter will rotate with great rapidity. The energy-storing element takes the form of a spring 98, which is rigidly associated at its ends with the cutter carrier 88 and the gear 89, so that, during the continued rotation of the gear 89 and the holding of the cutter stationary, the spring will be placed under tension. Thus the inventor seeks by increasing the rate of rotation of the cutter over that of the actuating element to have the cutter traverse the path of movement of the formed tube at such speed as will enable the tube to be severed without so interrupting the movement of the tube as to cause it to be distorted in the cutting operation.

The mechanism for controlling the operation of the cutter consists of a pair of pawls 99 and 100, which are alternately engaged with the cutter carrier 88. They are mounted on a pivot 101, and are adapted to engage a pair of abutments 102 and 103 on the cutter carrier 88 and to co-operate thus with these abutments to maintain the cutter stationary.

Now it is said that the defendants do not employ a cutter having blades, but that they merely use a breaker bar. This bar does not cut the tube as a knife would, but does at least sever periodically a certain portion of the tube which is fed to it. Examination of the severed portion shows that it is somewhat mashed at one end, and to that extent distorted. The defendants argue that for that reason the defendants' cutter does not perform the same function or produce the same result as the blades of the patent in suit. I cannot agree with this view. The distortion referred to in the claim of the patent cannot mean anything other than buckling of the tube or such mashing as would destroy its utility.

No more persuasive, either, is the defendants' argument that, though the breaker bar is mounted on a revolving disk, it is not a rotary cutter within the meaning of the patent.

Mr. Lockwood, the defendants' expert, testified: "In the defendants' cutter we have an oscillating cutter mounted on what we might call a planetary mounting, that is, we say the earth rotates on its axis, but it revolves in a planetary way around the sun. We have this cutter revolving around the drive axis, but it is merely an oscillating cutter. It is not a rotating cutter in the sense of the Conti patent. It simply rotates, it is an oscillating cutter revolving in a planetary way. It is mounted pivotally and eccentrically on a disk, and is revolved while it is not cutting. The moment it begins to cut it is simply pushed back and is allowed to oscillate for a cut. And in the defendants' machine throughout the rotation of the driving shaft. * * *"

Admitting, however, that Mr. Lockwood correctly describes the mounting and movement of the defendants' cutter, nevertheless it does traverse the path of the movement of the tube in a fixed plane. The claim does not specify how the knife shall be mounted and does not exclude mounting the knife upon the rotary driving member.

A third element of difference between the two cutting mechanisms is pointed out by Mr. Lockwood in respect to the function of the spring members in the two devices. He states that the only means of rotating the cutter carrier of the patent in suit is the spring, whereas in the defendants' machine the spring serves no purpose in rotating the cutter carrier, the latter being the planetary disk revolved or rotated by power direct from the motor; so that the defendants' cutter carrier would rotate even though there were no spring, whereas the cutter blades of the patent in suit could not operate if the spring

were eliminated or broken. The sole function of the spring in the defendants' cutter is to impart a snap action to the knife or breaker bar. This seems to be an important difference in function and structure between the two springs. The claim is limited to "a spring operatively connecting the drive means and cutter." It will be recollected that the rotary driving means of the claim is the gear wheel, and the spring connects that gear wheel and the cutter. That is not the defendants' construction. Hence I do not find in the defendants' structure the connecting means between the drive and cutter such as the patentee defined in the claim.

The defendants argue that the abutment in its machine which contacts with the end of the breaker bar is not the equivalent of the "means for inhibiting the rotation of the cutter to cause a compression of the connecting spring and then releasing the cutter to cause a quick cutting action thereof under the influence of the said spring, whereby the tube may be severed during the forward movement thereof without distorting or buckling the same." That contention, however, is not sound, for, though the abutment may not be the specific spring releasable pawls 99 and 100 which contact with the abutments 102, 103 on the cutter carrier 88, nevertheless the abutment does inhibit rotation of the cutter within the meaning of the claim.

The defendants press a construction of claim 18, which, if established, would free them from infringement. A comparison of the defendants' machine with claim 18 certainly shows ·that, if claim 18 is to be construed as containing two separate elements, one for forming the tube and one for feeding it, the defendants do not infringe, because they have but one means for forming and feeding the tube.

In response, the plaintiff urges that it is not correct to construe claim 18 as calling for a feeding mechanism separate and distinct from the forming mechanism. The plaintiff argues that the language of the claim is not conclusive, and that the claim must be read upon the drawing and the specification and be construed in accordance therewith. The plaintiff urges that claim 18 is to be given the same effect as though the forming and feeding means were recited as means for forming and feeding. No authority is given for such a construction or rewriting of the claim, and the point is therefore one of considerable interest.

It has, of course, been said, as in McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 77, 35 L. Ed. 800, that, when the claim is explicit, the courts cannot alter or enlarge it; "but the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the patent-office, or the appellate tribunal, to which contested applications are referred. When the terms of a claim in a patent are clear and distinct (as they always should be), the patentee, in a suit brought upon the patent, is bound by it. He can claim nothing beyond it."

To give claim 18 the construction which the plaintiff urges would mean not the clearing up of an ambiguity or a rephrasing of the claim, but would in effect constrict the claim, because means for forming and feeding the formed tube define a more limited genus than means that do merely one or the other.

I have no doubt that the inventor in his specification and drawings shows not separate means, but the same means for performing both operations. A reading of the file wrapper confirms that view. We find, for example, such expressions as "the tube-forming and feeding means together with the cutting mechanism" (file wrapper March 11, 1926). Applicant is "the first one to provide a tube-cutting means cooperating with a tube-forming and feeding means" (file wrapper March 17, 1927), and "he has produced a new combination of a forming and feeding means with a cutting means" (file wrapper January 13, 1928), and in cross-examination defendants' expert Brown testified:

"X. Q. 38. I believe it has already been conceded, Mr. Brown, that the tube-forming means and the means for feeding the tube from the forming means comprises one and the same element? A. Substantially. Of course, as a matter of fact, it is made up of a few devices. The forming is due to the mandrel and to the winding tapes and to the pasting."

"X. Q. 39. But the same elements, be they whatever they are, both form the tube and feed the tube in the patented machine? A. Yes."

But to read the claim in accordance with the specification, drawing, and file wrapper requires something more than mere interpretation of a phrase. The problem presented here is unlike that discussed in Winget Kickernick Co. v. Kenilworth Mfg. Co. (C. C. A.) 11 F.(2d) 1, 2, wherein it was said: "The language employed refers to the symmetrical inset portion at the center of the bottom of the back. If this patent is meri-

482

torious, its meaning should not be limited to the literalism suggested."

The same situation is disclosed in Cincinnati Cadillac Co. v. English & Mersick Co. (C. C. A.) 18 F.(2d) 542, 543, in which it is held that courts, though they are without power to enlarge or restrict a claim for the purpose of making out a case of validity or infringement, may "construe a claim in the light of the specifications and the prior art, not for the purpose of expanding or limiting it, but for the purpose of making it operative or ascertaining its true meaning."

But in that case that latter rule was invoked because of the suggestion of a latent ambiguity in the words used in the claim.

█ In the case at bar there is no ambiguity of words, no difficulty whatsoever in determining what the words mean. The claim as drawn is broader than it should be. In such instances, if by mistake or inadvertence, patentees have their remedy by way of applications for reissue. As has been noted above, courts cannot rewrite claims. To attempt to do so here would be to ignore the possibility that the language of the claim was not inadvertently used but deliberately; in which event obviously the function of the forming means, i. e., the feeding means, was endeavored to be read into the claim as a separate element.

From the foregoing view, on the question of infringement and the infirmity of the claim in suit, it is not necessary to consider the prior art. I may say, however, that a detailed consideration of all the patents offered by the defendants fails to show an anticipation of the invention.

The defendants may have a decree dismissing the bill. Settle decree on notice.