**ANGLE et al. v. RICHARDSON.**

**RICHARDSON et al. v. S. S. WHITE DENTAL MFG. CO. et al.**

No. 218–M.

District Court, S. D. California, Central Division.

July 10, 1937.

Finlayson, Bennett & Morrow (by James S. Bennett), of Los Angeles, Cal., and Henry N. Paul, Jr., of Philadelphia, Pa., and Lyon & Lyon (by Frederick S. Lyon), of Los Angeles, Cal., for complainants and cross-defendants.

H. A. I. Wolch, of Los Angeles, Cal., for Sidney Richardson.

Wilbur D. Finch, of Los Angeles, Cal., for Charles Edward Boyd.

J. Calvin Brown, of Los Angeles, Cal., for both Richardson and Boyd.

McCORMICK, District Judge.

The complainants, Anna Hopkins Angle and The S. S. White Dental Manufacturing Company, a corporation, are respectively owner and exclusive licensee of letters patent No. 1,584,501, granted May 11, 1926, to Edward H. Angle for "Orthodontic Appliance."

On April 2, 1934, they filed their bill in equity against Sidney Richardson as defendant, to restrain infringement by him of said patent and for an accounting. By his answer filed herein on May 14, 1934, the defendant raised issue by averring:

1. That the patent is invalid in the light of the prior art.

2. That Edward H. Angle was not the inventor of the device patented and that he wrongly obtained the patent.

3. That the defendant has not infringed the patent.

4. That because of the pendency of an action for an accounting in a state court in California, this suit was wrongfully and inequitably brought.

Thereafter, pursuant to leave, and on April 15, 1935, the defendant filed an amended and supplemental answer, renewing the defenses earlier pleaded, and asserting therein further defenses to complainants' bill, among which is the grant on October 9, 1934, to defendant and one Charles Edward Boyd of letters patent No. 1,976,141, for "Method of Producing Orthodontic Band Brackets," and concurrently with the filing of the amended and supplemental answer Richardson and Boyd filed herein their cross-bill in equity against the aforesaid complainants for the infringement of said patent No. 1,976,141, and for an accounting. Answer was made by said two cross-defendants denying the validity of said last-mentioned patent and also denying any infringement thereof by them or either of them.

■ The issues of the main suit and the cross-bill have been heard together, and these conclusions are intended to reach and apply to the entire controversy in this court. There is no determination herein of the local issues in the aforesaid state court action. Such issues are considered to be irrelevant to this federal suit and cross-suit for infringement of patents.

■ By following the course charted for us by the Supreme Court in Eibel Co. v. Paper Co., 261 U.S. 45, 60, 63, 43 S.Ct. 322, 327, 328, 67 L.Ed. 523, and in the very late decision in Mumm v. Decker & Sons, 57 S.Ct. 675, 81 L.Ed. ——, April 26, 1937, we find that patent No. 1,584,501 is presumptively valid and should be classified as basic improvements in orthodontic appliances.

■ The issuance of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with law have been met, and where attack is made upon a patent, the burden of proving want of novelty is upon him who avers it, to show by credible evidence, beyond a reasonable doubt, that the prior state of the art invalidates and defeats the patent. No such showing has been made by the evidence in this suit.

There are only two matters in the record that can be urged as affecting to any degree the inventive concept that is disclosed and taught by this orthodontic appliance patent or that might operate to invalidate the grant to the patentee or his successors in interest.

The first is found in the testimony of Dr. Harry Stallard, a witness called by the complainants to disclose the known art at the time that the patentee Angle pursued his study and work that developed into the application for the main patent in suit, to wit, No. 1,584,501.

The then latest improvement of prior methods in the art involved, viz., that of correcting malposed teeth of the dental arch, was by the application to the teeth of appliances known as ribbon arch mechanism. These devices proved insufficient to attain to the required degree firm, accurate, and positive movements of either the crown or root of a tooth in any desired direction. The orthodontist could not with the known instrumentalities control tooth movements with the desired precision. They were inadequate to accomplish torque movements of the teeth. The deficiency was principally due to the undiscovered method of constructing an appliance and of disclosing a method of producing it wherein an arch bar element would employ force in the dental arch in the most satisfactory way, and the problem that confronted the art of orthodontia and that challenged Angle, who has been a leader in this field of endeavor and who was the patentee of grants that embodied and disclosed the ribbon arch mechanism, was to conceive, construct, and demonstrate appliances that would exceed the

accomplishment of the earlier methods and more efficiently, beneficially, and wholly rectify malposed tooth conditions. In working to this end, Dr. Angle, in discussing with Dr. Stallard the ribbon arch mechanism deficiencies about Christmas of 1922, suggested the manufacture of a device that embodies the inventive principle of the patent in suit, which we think generally resides in the novel combination of two features described and claimed in the patent: (1) An arch bar receiving slot in the outer face of a tooth band bracket, and (2) projections extending away from the arch bar receiving slot that afford means for engaging ligatures operable in combination with the arch bar to force malposed teeth in any desired movement and position. Such an appliance was made by Dr. Angle and given to Dr. Stallard and was used by him in the course of professionally treating a child patient from September, 1922, to June, 1923, for which he received fees, no part of which, however, were received by Dr. Angle. This appliance, while employed beneficially in the treatment of the case, was crudely made and was not in suitable form for commercial production. No other identically formed appliance had been used more than two years "before" December 3, 1925, the date of the application for patent No. 1,584,501.

▪ It is argued by defendant that the aforesaid use by Dr. Stallard of the appliance operates to invalidate the patent under the fifth subdivision of section 4920 of the Revised Statutes (35 U.S.C.A. § 69, subd. 5).

There are two reasons why this argument is untenable under the record in this suit:

First, the Revised Statute provides that before the defendant can invoke its terms on the trial of an action or suit for infringement, he shall have given written notice at least thirty days before the trial, of his assertion that the use by Dr. Stallard defeated the patent.

No such notice has been given, and no request was made during the trial to amplify or enlarge the defenses that have been pleaded by the defendant. This failure to comply with the statutory prerequisite prevents the defendant from urging this defense to this suit. Abrahams v. Universal Wire Co., Inc. (D.C.) 10 F.(2d) 838. See, also, Morton v. Llewellyn (C.C.A.9) 164 F. 693, on the effect of failure to give timely notice of special defenses of prior public use.

▪ Second, while the appliance used by Dr. Stallard in 1923 cannot be considered as an unsuccessful or a wholly experimental use of the inventive concept that is embodied in the patent in suit, nevertheless the crudity of the appliance, the bad physical effects that it caused in the patient's cheek, the singularity of the use, and the disclosure of the appliance to none other than Dr. Stallard's wife, who is also a dentist, and to the child patient's mother, point to a use that was chiefly experimental, and under the recent decision in Paraffine Companies v. McEverlast, Inc. (C.C.A.9) 84 F.(2d) 335, is not such a public use as to invalidate the patent. See, also, Diamond Patent Co. v. S. E. Carr Co. (C.C.A.9) 217 F. 400, 402.

Moreover, it is doubtful under the evidence that defendant Richardson ever regarded this Stallard single practice as defeating the patent until the monetary fruits of litigation prompted such course, because, under date of January 26, 1930, he wrote a letter to Dr. Stallard in which he declined to fill an order that Dr. Stallard had given for brackets that embodied the principles of the patent in suit, and in this letter stated: "Owing to the brackets being patented, we are unable to make them for you." This attitude does not conform to his present contention. Of course, we do not hold that such concession precludes the defendant from now contending that the patent is invalidated by prior public use or otherwise, but we do say that it is a significant admission against interest that should weigh in considering the equities in this suit. We believe that in the same way the camouflaged manner of billing the Richardson brackets to Stallard is significant as indicative of a consciousness of invading patent rights of complainants.

The second invalidating citation by defendant is a book or treatise on the "Technics and Principles of Dental Orthopedia and Prosthetic Correction of Cleft Palate," by Dr. Calvin S. Case, published by the C. S. Case Company of Chicago in 1921, and copyrighted the same year. The pertinent parts of this work are found in chapter XIX thereof, and at pages 161 to 164, both inclusive.

Before discussing this reference, it is well to set forth the principles that establish the rule applicable to prior printed

publications where such are relied upon to invalidate or anticipate a patent.

■ A printed publication must contain within itself and its four corners, and not "aliunde," the mechanism, appliance, or process that is patented, before it can be regarded as an anticipation and invalidation of a patent.

In other words, it is not competent to read into the publication information that it does not give or impart to those skilled in the art involved in the printed matter. Or, to express the principle in another way, the question in such medium of proof is, what does the prior publication say or illustrate, not, what it might have said or what it should have said or shown. Badische Anilin & Soda Fabrik v. Kalle & Co. (C.C.A.2) 104 F. 802, 808; Scoville Mfg. Co. v. Satler (D.C.Conn.) 21 F.(2d) 630. In the Badische Case, supra, Judge Lacombe aptly observed: "If prior patents and publications can be reconstructed by extrinsic evidence to fit the exigencies of the case, the inquiry will no longer be confined to what the publication communicates to the public, but it will be transferred to an endeavor to ascertain what its author intended to communicate."

■ Many instrumentalities shown or described in printed publications that adequately antedate a patent might by modification be made to accomplish the function performed by a questioned invention, and thereby vitiate a patent; but unless the prior publication fully discloses and imparts to those skilled in the art substantially the same mode of operation and identical result attained by the patent there is no anticipation. See Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658.

The specific matter in Dr. Case's work relied upon by defendant consists of text describing Case's methods of attaching double hooks or brackets to bands contacting teeth so as to correct malpositions of them in the mouth, and drawings that illustrate such methods.

The nearest approach to the arch bar devices that embody the principles of the Angle patent under attack is an appliance illustrated by a drawing on the upper right hand side of page 162 of the book. This instrumentality made of wire is formed with a crimper plier that is also illustrated by Dr. Case. It has the appearance of a miniature cleat shaped like a double hook. In the outer face of the cleat there is an irregularly formed depression disposed centrally between the two wings. This is referred to by defendant as an "arch bar receiving slot," but it is obviously not intended as such, and in the combination appliance described by Dr. Case has no such function. If an arch bar were placed in this winglike opening or depression, it would be ineffectual to accomplish accurate torque movements which are the chief attainments of the patent in suit. The sole movements attainable by Dr. Case's teachings and illustrations are depressing from the arch, elevating the tooth by means of an elastic, or tipping it. Many more are possible with the Angle arch bar brackets, including the important and previously unattainable torque movements. These novel accomplishments have been shown by the testimony and are described in the specifications on page 3, lines 20 to 32, inclusive, as follows: "Furthermore, the bracket attachment affords such a positive locking means comprising the ligature wire lock, that said arch-bar may be so rigidly engaged with the bracket as to insure an ideal torque power in any desired direction, whereby the movement of the tooth roots either labially or lingually, and the tipping mesially or distally of the crowns and roots, as well as the rotation of the tooth, may be effected with equal facility. In fact, every possible desired movement of the teeth may be readily accomplished thereby."

We find nothing in the reference to Case that discloses or imparts to those skilled in the art the "parallel slots" of claims 4 and 5 of the patent in suit. These slots are clearly defined in the questioned Angle patent when the intended use of the appliance is considered with the specifications of the patent, and particularly the following on lines 121 to 129, inclusive, of page 2 thereof: "In the form of my invention shown in Figs. 6 and 7, the bracket 33 is provided with the arch-bar slot 34 in its outer face 35, and the lock receiving slots 36 in its lateral faces 37, extended parallel with the slot 34 upon opposite sides thereof, and through which the legs or prongs 23 of the lock may be extended, and said slots correspond to the recesses 19 in Figs. 4 and 5."

It would require something other than skill or reason to conclude that the bent wire device disclosed in Dr. Case's book suggests all the principles and novel elements of the Angle patent in controversy.

There has been no anticipation of this Angle patent established in this suit. Rule XXI, volume I, Hopkins on Patents, 257; Kinnear, etc., Co. v. Capital Sheet-Metal Co. (C.C.) 81 F. 491.

In considering this Angle invention and the proper scope to be given to its claims, one should read the letters patent in the light of the objects of the invention as expressed in the grant, as well as the state of the art involved.

If this is done, it is clear, at least by inference, if not from the text itself, that the patentee described, specified, and claimed an orthodontic appliance that is sufficiently rigid to operate and function so as to attain all purposes of the invention. This would necessarily teach one skilled in the art to use in the fabrication or manufacture of the appliance such degree of metallic construction materials as would be desirable.

In the statement of the objects of the invention the specifications read:

"My invention comprehends an arch-bar attaching bracket, the construction of which is ideally adapted to be conveniently soldered to the tooth-band, and·to afford such a tenacious attachment therewith, that any possible movement of the tooth, to which the band may be fitted, may be effected without danger of distortion or fracture of the appliance.

"Further objects of my invention are to provide a tooth-band with a bracket having means cooperative to so firmly lock an arch-bar therein as to insure the firm, accurate and positive movements of either the crown or root of a tooth in any desired direction, and·thereby so facilitate the cooperative action of the arch-bar that it may as readily effect the movement of teeth lingually, labially and buccally, or they may be rotated or tipped transversely with respect to their axes, and may be as readily forced laterally in the direction of the length of the arch-bar with equal accuracy of movement.

"My invention is advantageous in that the bracket serves as a reinforcement affording a maximum solder attaching surface, and provides a uniform three-surface engagement with the arch-bar, which snugly fits therein, and which may be readily shaped and adjusted to engage therewith from the outer side thereof."

The patentee contemplates a rigid bracket, but leaves the degree of rigidity as a detail of manufacture. The degree is obvious. Petroleum Rectifying Co. v. Reward Oil Co. (C.C.A.9) 260 F. 177.

A finding is made that Angle patent, No. 1,584,501, is a valid invention over prior orthodontic appliances in the two novel combination features already mentioned in these conclusions, and that Edward H. Angle, the patentee therein, was the inventor of all devices that embody the novel elements of said patent.

This Angle patent, like the one considered by the Supreme Court in Eibel . Co. v. Paper Co., 261 U.S. 45, 60, 63, 43 S.Ct. 322, 327, 328, 67 L.Ed. 523, was not a pioneer patent creating a new art, but it was an improvement that usefully and substantially advanced the art of orthodontia. Its merit entitles it to liberal treatment, to the end that the inventor may reap all the fruits of. his discovery. Petroleum Rectifying Co. v. Reward Oil Co., supra.

We come to the ultimate issue, namely, whether or not infringement by defendant of any claim of the Angle patent has been established. This question is co-related to the validity and scope of a later patent, No. 1,976,141, granted to S. Richardson and Charles Edward Boyd on October 9, · 1934, upon an application filed June . 1, 1932, and in the consideration of it the litigated issues in this court of the cross-bill of Richardson and Dr. Boyd and the answers thereto will also be determined.

The cross-action charges infringement of the Richardson and Boyd patent by manufacturing and selling orthodontic band brackets fabricated in hard tough metal and advertised to the trade by The White Company as types G452 and G457 of its factory product.

Earlier in this memorandum we have directed attention to the acknowledgement of Richardson in 1930 of the validity of the Angle patent. It also appears that some time in 1929 the defendant manufactured and sold about fifty infringing devices. These brackets were counterparts of the early type of appliance made and sold by The S. S. White Company under the Angle patent in suit and de- . scribed in The White Company catalogue as Tie Brackets G442 and G447. Some. of these brackets sold by defendant are marked Plaintiffs' Exhibit 7 herein. They were sold to the same dentist to whom Richardson later declined to sell brackets

because of his belief that by so doing he was invading the patent rights of the complainants in this suit. The only differences between these early designs and those now made and sold by The White Company as types G452 and G457 are the contour of the wings, the depth of the base below the slots, and the composition of the alloy from which the brackets are made. There has been no change in the composition or construction of the earlier types of The White Company products. They are made of softer metal than the later appliances.

In order to evaluate the Richardson and Boyd patent it is necessary to examine the record of events that led to its issuance as shown by the file wrapper and contents that is in evidence.

The application filed June 1, 1932, was for the improvement of "Orthodontic Band Brackets and Methods of Producing Same." Originally there were ten claims, seven being for an article, to wit, orthodontic band bracket, and three for a method of making such brackets. All were rejected by the examiner as lacking invention over the Angle patent. Richardson amended his application by canceling all original claims and asserting four new claims, each for a "method of producing an orthodontic band bracket." These claims were also rejected upon Angle patents and other prior patents. Again Richardson canceled all claims and amended the application by making four new claims, all being for a "method of producing a one-piece orthodontic band bracket." One of these was rejected as lacking patentability over an earlier Richardson patent, and the remaining three were allowed solely as to the method shown and claimed in the Richardson patent in suit. It is clear from the evidence that the patent was and is limited to a sequence of steps in a specified process of production. It is a restricted method patent. There is no grant of a product or appliance nor as to the degree of hardness or toughness of the metal from which a product or appliance is fabricated.

This conclusion is strengthened when comparison is made of the objects of the Angle invention read in the light of the following part of its patent specifications: "The front or outer wall 15 of the bracket 13 is provided with the deeply cut or depressed slot 16 extending transversely through the body of said bracket and in parallel relation to the length of said tooth-band, and so nearly bisecting the bracket body as to afford but a relatively thin web 17, sufficient only to insure the required rigidity, yet permitting the archbar to so closely approach the tooth-band as to conserve space and thereby minimize the extent of projection of the regulating appliances in the mouth of the patient," with the failure of the later Richardson patent, either by specification or in claim to explain or define such used terms as "alloy or platinized metal that is very hard and tough," "insuring the greatest possible strength of the metal that is utilized for forming the brackets and likewise the greatest possible resistivity to strains and stresses that are developed while the brackets are in service," "made of substantial thickness," or by any other full, clear, and exact verbiage that imparts a statutory disclosure of the construction materials of the patented method under 35 U.S.C.A. § 33, which in its applicable part is as follows: "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same."

The nearest approach to compliance with statutory requirements of clarity and precision is found in the following specification language of the Richardson patent: "The transverse arch bow receiving notch 19 extends approximately half way through the body of the bracket and as a result a wall or body 22 of substantial thickness is provided between the inner end of the notch 19 and the rear face of the bracket, which latter is soldered or brazed to the tooth band and thus the solid base of the bracket reenforces the band at the point of attachment of the bracket thereto and at the same time the necessary strength and rigidity is produced in the jaws of the bracket or those portions above and below the slot 19 to resist the spreading apart of the jaws of the bracket as a result of the development

of tortional strains between the bracket and the engaged arch bow."

But when the generic inventive aspect of the Angle patent is considered with the drawings, specification matter, and broad claims that are found in it, the general and nebulous descriptions, disclosures, or claims of Richardson are insufficient to justify any patent protection to the "hard tough metal" that is used by him in his practice of making orthodontic band brackets. Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721; Schick, etc., v. Dictograph Products Co. (C.C.A.2) 89 F.(2d) 643, 33 U.S.P.Q. 350; Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868; Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 26 L.Ed. 149. The patentable entity of the Angle invention does not consist entirely in the commercial form or design of orthodontic appliances that are manufactured or sold under it.

Inasmuch as no pate_t right exists in cross-complainants in either an orthodontic appliance or in any hard tough metal, it follows that if Richardson contributed anything to the art of orthodontia that was patentable over Angle, it consisted in the order or sequence of steps of production that are specified and that are sufficiently claimed in his method patent.

Claim 2, which in my opinion is the only one that complies with all patent law requirements, reads: "2. The herein described method of producing a one piece orthodontic band bracket, which consists in first cutting a transverse slot in the top face of a block of hard tough metal and then simultaneously cutting transverse slots in the end portions of said block and substantially parallel to said first slot, said cutting of said block in each instance being so effected as to retain the fibers and molecules in the uncut portions of said block in their original positions without distortion and stretching the same."

It is clear from the evidence that both Richardson and Dr. Boyd and one Dr. Steiner, during the summer and fall of 1932, jointly made the bracket that was later and is now substantially reproduced in the manufacture by The White Company of its types G452 and G457 of its production. We find this to be clearly shown by fair analysis of the oral testimony and by writings that were introduced into the record and it is also established that all of the

suitors recognized Richardson's metallurgical contributions to the financial success of Dr. Angle's patented orthodontic appliances as made and sold by The White Company. But these facts alone do not justify a conclusion either that the Richardson patent is valid or that it has been infringed by the cross-defendants, nor do these facts per se require any limitation of the broad Angle patent claims. All that these joint or combined activities accomplished was to devise an improved order of successive steps in producing orthodontic appliances which Dr. Angle had invented and patented whereby the cutting of orthodontic brackets from a block of metal was so effected as to retain the fibers and molecules in the uncut portions of the block in their original positions without distorting or stretching the same. It is in this advance, and in it alone, that the exclusive property right of the Richardson patent resides, and as has been stated, the monopoly is only to the extent that is justified by the history of the prior art and the clear and explicit words and claims of the patent. Holland Furniture Co. v. Perkins Glue Co., supra; Eibel Co. v. Paper Co., supra. Infringement will be found only in approximate copies of the new device suggested to complainants by Dr. Steiner and Dr. Boyd and defendant Sidney Richardson, that are proven to have been manufactured by the identical or equivalent successive steps for which the Richardson patent in suit was granted as previously stated in these conclusions. In other words, the claims of Richardson 1,976,141 being for a restricted process—a sequence of steps—The White Company must follow. that sequence if it is to infringe. Winget Kickernick Co. v. Sil-O-Ette Underwear Corp. (C.C.A.2) 89 F.(2d) 635, 33 U.S.P.Q. 397.

The record shows that from the time that The White Company commenced to manufacture commercially its No. G452 and No. G457 types of Angle patented orthodontic brackets in May, 1933, until October 31, 1934, it followed the identical order of milling the arch slot and the slots for the wings that are set forth in claim 2 of patent 1,976,141, but that upon the last named date it changed the process by reversing the sequence of steps in cutting the slots in the production of brackets.

This modification we think was prompted by a belief on the part of The White Company that by continuing the earlier sequence of steps after the Richardson

and Boyd patent was granted on October 9, 1934, it was infringing that patent. This attitude is tantamount to an acknowledgement of the validity of claim 2 of the Richardson patent in suit, as well as the infringement thereof by The White Company prior to October 31, 1934.

But merely changing the order of cutting the slots is admitted to be of no advantage in manufacturing and producing the brackets, and, moreover, such modification is simply the substitution of an equivalent, and does not avoid infringement. Los Angeles Lime Co. v. Nye (C.C.A.9) 270 F. 155.

We conclude by finding and holding that both Angle patent, No. 1,584,501, and Richardson and Boyd patent, No. 1,976,-141, are valid; that all claims of the aforesaid Angle patent are valid and·have been infringed by the defendant Sidney Richardson by making and selling or distributing any orthodontic brackets illustrated by Figs. 2 and 3 of patent No. 1,-976,141 or facsimiles thereof or that are exhibits in this suit; that claim 2 of the above-mentioned Richardson and Boyd patent is valid and has been infringed by The S. S. White Dental Manufacturing Company, a·corporation, and contributorily infringed by Anna Hopkins Angle, in the factory methods followed in producing the catalogued types G452 and G457 of orthodontic brackets of The S. S. White Dental Manufacturing Company.

Accordingly, decrees· of injunction and for accounting are ordered for complainants Anna Hopkins Angle and The S. S. White Dental Manufacturing Company and against defendant Sidney Richardson upon the issues of the bill of complaint and amended and supplemental answer, and for cross-complainants Sidney Richardson and Charles Edward Boyd upon the issues of the bill of cross-complaint and answer thereto, all in accordance with the views expressed in these conclusions of the court.

The foregoing written conclusions, with such further findings of fact and conclusions of law as may be made, as herein ordered, shall constitute the findings and conclusions required by Equity Rule 70½, 28 U.S.C.A. following section 723.

No party shall recover costs herein to and including the entry of interlocutory decrees hereby ordered, but costs, if any, subsequent to entry of such interlocutory

decrees will abide later decision of the court.

Solicitors for respective suitors will collaborate, prepare, and present additional findings of fact, conclusions of law, and decrees, under the rules and in conformity hereto.